LaMEAU v CITY OF ROYAL OAK

Docket Nos. 290059 and 292006. Submitted May 4, 2010, at Detroit.
Decided July 13, 2010, at 9:00 a.m.

Thomas LaMeau, personal representative of the estate of John M.
Crnkovich, deceased, brought an action in the Oakland Circuit Court
against the city of Royal Oak and two of its employees (Elden
Danielson and Bryan Warju), the Detroit Edison Company, and
Gaglio PR Cement Corporation, seeking damages resulting from the
wrongful death of Crnkovich. Crnkovich had died from injuries
received while operating a motor scooter on a city sidewalk that had
been constructed by Gaglio under the direction of Danielson and
Warju. Crnkovich had hit a guy wire strung across the path of the
sidewalk from a Detroit Edison utility pole to an anchor in the
ground. The guy wire and anchor had been in place before the
sidewalk was constructed, and the anchor had been embedded in an
asphalt section of the sidewalk during the construction. The city and
Gaglio filed motions for summary disposition in October 2008.
Danielson and Warju moved for summary disposition in December
2008. On January 5, 2009, the court, Colleen A. O'Brien, J., granted
the motions by the city and Gaglio with regard to the nuisance claims
against them, but denied their motions with regard to the individual
negligence claims against them. On January 7, 2009, the city again
moved for summary disposition, as did Danielson and Warju. On
January 26, 2009, the city appealed as of right the denial of its
October 2008 motion for summary disposition with regard to the
city's claim that it was entitled to governmental immunity (Docket
No. 290059). Because the city's appeal automatically stayed the
proceedings below, the city filed a motion on February 10, 2009,
seeking an order remanding the matter to the trial court to conduct
a hearing on pending motions for rehearing and summary disposi-
tion. The Court of Appeals entered an unpublished order to remand
in Docket No. 290059 on March 31, 2009. On April 29, 2009, the trial
court entered an opinion and order denying Danielson and Warju's
December 2008 motion for summary disposition, which had alleged
that the claims against them were barred by governmental immunity.
The trial court also entered an opinion and order that denied a
motion for reconsideration filed by the city, Danielson, and Warju. On
May 11, 2009, Danielson and Warju appealed the denial of their

motion for summary disposition (Docket No. 292006). The Court of Appeals then granted Gaglio leave to appeal the denial of its October 2008 motion for summary disposition (Docket. No. 289947) and consolidated that appeal with the appeal in Docket No. 290059. Unpublished order of the Court of Appeals, entered May 12, 2009 (Docket No. 289947). The Court of Appeals consolidated all three appeals in an unpublished order, entered May 28, 2009 (Docket Nos. 289947, 290059, and 292006). On April 29, 2010, the Court of Appeals entered an unpublished order that closed without prejudice the appeal in Docket No. 289947 and deconsolidated that appeal from the other two appeals.

The Court of Appeals *held*:

1. The highway exception to governmental immunity, MCL 691.1402(1), imposes a duty on municipalities to maintain highways under their jurisdiction in reasonable repair. MCL 691.1401(e) defines "highway" to mean a public highway, road, or street that is open for public travel, and the definition includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway, but excludes alleys, trees, and utility poles. The fact that a municipality does not have a duty to maintain utility poles in reasonable repair, however, does not relieve the municipality of its duty to maintain its sidewalks in reasonable repair even when a utility pole causes a sidewalk's state of disrepair. The city had a duty to make reasonable repairs to its sidewalk that were occasioned by the anchor and guy wire.

2. Once the city decided to construct the sidewalk in such a way as to incorporate the guy wire and anchor into the sidewalk, the guy wire and anchor were part of the sidewalk. MCL 691.1402(1) imposes liability on municipalities for defects in sidewalks, even defects occasioned by the presence of structures that municipalities would normally not have a duty to maintain in reasonable repair. The city had jurisdiction over the sidewalk, and it necessarily acquired jurisdiction over the anchor and guy wire to the extent that they were a part of the sidewalk.

3. Under the totality of the circumstances, whether the city had closed the sidewalk to the public was a question of fact.

4. The undisputed evidence showed that not only was the city aware of the defective condition of the sidewalk for a period of 30 days or longer before the injury occurred, its employees actually created the defective condition. There was no dispute that the city had adequate notice of the defect for purposes of the notice requirement of MCL 691.1403.

5. The trial court did not err when it denied the city's motion for summary disposition that alleged that the city was immune from suit. The city had a duty under the highway exception to rectify the defect that it created.

6. The evidence suggested that Danielson and Warju were indifferent to the magnitude of the danger being created by ordering that the sidewalk be paved before the anchor and guy wire were moved. A reasonable jury could conclude that the decision to incorporate the anchor and guy wire into the sidewalk demonstrated a substantial lack of concern for whether an injury would result. There was evidence from which a reasonable fact-finder could conclude that Danielson's and Warju's efforts to have the anchor and guy wire relocated were grossly deficient and that their efforts to safeguard the public were inadequate. There was a clear question of fact about whether Danielson and Warju were grossly negligent and thus, under MCL 691.1407(2) and (7)(a), not entitled to governmental immunity.

7. There was evidence from which a reasonable jury could conclude that Crnkovich's conduct was "the" proximate cause of his injuries, that is, the one most immediate, efficient, and direct cause of his injuries. However, there was also evidence from which a reasonable jury could conclude that the conduct of Danielson and Warju in creating the hazard and then failing to rectify or mitigate the hazard constituted the one most immediate, efficient, and direct cause of Crnkovich's injuries. There was also evidence from which a reasonable jury could conclude that the failure to have barricades in place was attributable to the conduct of Danielson and Warju or was not a significant cause of Crnkovich's injuries. The trial court did not err when it denied Danielson and Warju's motion for summary disposition that was based on their claim of governmental immunity.

Affirmed.

TALBOT, P.J., dissenting, stated that in order to show that a governmental agency failed to maintain a highway in reasonable repair, a plaintiff must demonstrate that a defect existed in the highway itself. The trial court erred by declining to award summary disposition to the city because a question of fact did not exist regarding whether the guy wire constituted a defect. MCL 691.1401(e) specifically excludes utility poles from the term "highway," and it should not be suggested that any appendage extending from a utility pole should be treated as an entity separate or distinguishable from the utility pole. The majority's effort to expand the term "defect" to encompass the guy wire is contrary to the plain meaning of the term and Michigan Supreme Court caselaw that has explicitly restricted sidewalk defects to imperfections occurring in the sidewalk itself. In addition, the highway exception to governmental immunity does not include a duty to design or to correct defects arising from the original design or construction of highways. Although a question of fact may have existed regarding whether the

conduct of Danielson and Warju rose to the level of gross negligence, liability was precluded because it could not be reasonably concluded that their conduct was "the" proximate cause of the injuries or damage. Although the conduct attributable to these defendants could be construed as having comprised "a" proximate cause of Crnkovich's injuries, their conduct was not "the" proximate cause. Crnkovich's own behavior, combined with that of Detroit Edison, comprised a more direct and immediate cause of the injuries incurred than the conduct attributable to Danielson and Warju. Therefore, any negligence on their part was too remote to overcome the grant of immunity afforded by MCL 691.1407. The trial court's denial of defendants' motions for summary disposition that were based on their assertion of governmental immunity should be reversed.

1. Governmental Immunity — Highway Exception — Sidewalks — Utility Poles.

A municipality must maintain its public highways, roads, and streets, including the bridges, sidewalks, trailways, crosswalks, and culverts on the highway, in reasonable repair; a municipality does not have a duty to maintain in reasonable repair alleys, trees, and utility poles; the fact that a municipality does not have a duty to maintain utility poles in reasonable repair does not relieve the municipality of its duty to maintain its sidewalks in reasonable repair even when a utility pole causes a sidewalk's state of disrepair (MCL 691.1401[e], 691.1402[1]).

2. Governmental Immunity — Sidewalks.

The governmental tort liability act imposes liability on municipalities for injuries caused by defects in sidewalks over which they have jurisdiction even if the defects are occasioned by the presence of a structure that the municipality would normally not have a duty to maintain in reasonable repair (MCL 691.1401[e], 691.1402[1]).

3. Governmental Immunity — Governmental Employees — Gross Negligence — Motions and Orders — Summary Disposition.

A plaintiff must present evidence sufficient for a reasonable finder of fact to conclude that a governmental employee was grossly negligent in order to survive a motion for summary disposition premised on the immunity afforded to governmental employees; the court may decide the question as a matter of law if there is no question of fact about whether the allegedly negligent conduct rises to the level of gross negligence; evidence of ordinary negligence does not create a material question of fact concerning gross negligence; to find gross negligence, there must be evidence that

the governmental employee engaged in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury would result (MCL 691.1407[2][c], [7][a]).

4. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — GROSS NEGLI-
   GENCE — PROXIMATE CAUSE OF INJURY OR DAMAGE.

   A governmental employee is immune from tort liability if the employee is acting (or reasonably believes that he or she is acting) within the scope of the employee's authority and if the governmental agency is engaged in the exercise or discharge of a governmental function unless the employee's conduct amounted to gross negligence and that gross negligence was the proximate cause of the injury or damage, that is, the one most immediate, efficient, and direct cause of the injury or damage (MCL 691.1407[2][c]).

*Wigod, Falzon, McNeely & Unwin, P.C.* (by *Lawrence C. Falzon* and *Kevin A. McNeely*), for Thomas LaMeau.

*Johnson, Rosati, LaBarge, Aseltyne & Field, P.C.* (by *Marcia L. Howe* and *Michael E. Rosati*), for the city of Royal Oak, Elden Danielson, and Bryan Warju.

Before: TALBOT, P.J., and FITZGERALD and M. J. KELLY, JJ.

M. J. KELLY, J. In this suit to recover damages for wrongful death allegedly caused by a defective sidewalk, defendants city of Royal Oak, Elden Danielson, and Bryan Warju appeal as of right the trial court's denial of their motions for summary disposition premised on governmental immunity. Because the trial court correctly determined that Royal Oak, Danielson, and Warju were not entitled to governmental immunity, we affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

A. THE SIDEWALK AND ACCIDENT AT ISSUE

Bryan Warju testified at his deposition that he was an engineering assistant under the supervision of Royal Oak's city engineer, Elden Danielson. Warju stated that

he served as the field manager for Royal Oak's sidewalk-improvement project in the summer of 2005. Warju said that he walked the area on the south side of Normandy Street where a new sidewalk was to be constructed and noticed a telephone pole's guy wire that crossed the path of the proposed sidewalk.

Skylan McBeth, who is a service planner with the Detroit Edison Company, testified that a guy wire is a steel cable that runs from a telephone pole to an anchor in the ground. The wire pulls the pole in the direction opposite the weight on the pole. McBeth said that a "down guy" is a guy wire that runs in a direct line from the pole to the ground. However, a "sidewalk guy" is a wire that runs along a three-inch steel bar that juts out from the telephone pole and then proceeds straight down from the end of the bar to the anchor in the ground.

In May 2005, Warju informed various parties, including defendants Gaglio PR Cement Corporation (Gaglio Cement) and Detroit Edison, about a preconstruction conference to discuss the details of the 2005 summer sidewalk-construction project. The letter indicated that the conference would include a discussion concerning any conflicts with utilities. Danielson averred that Detroit Edison did not send a representative to this meeting, and Warju stated in his affidavit that he would have discussed the existence of the guy wire with the representative from Detroit Edison had a representative gone to the meeting. Danielson also averred that he spoke with various persons from Detroit Edison and orally requested them to move the guy wire to a safe location. However, no one from Detroit Edison came to move the wire.

Rosalino Gaglio (Rosalino) testified that he was a foreman with Gaglio Cement and that he visited the site on Normandy Street where the sidewalk was to be constructed. He stated that he saw the wire at issue and

told Warju that the wire needed to be moved. Rosalino said that Warju told him that he would contact Detroit Edison and have it moved.

Salvatore Gaglio (Salvatore) testified that he was a foreman with Gaglio Cement and that he had worked on the project to pour a new sidewalk on Normandy Street in 2005. He stated that Royal Oak had set out the path of the new sidewalk using stakes and paint. As they approached the guy wire, he notified Royal Oak's inspector about the need to move the wire. He said that Warju told them to just block it off, but Salvatore responded that they should either block it off further back or stop the project until the guy wire could be moved. Rosalino stated that he wanted to leave 10 flags—which are 5-foot by 5-foot slabs of concrete—open on either side of the guy wire. Thus, there would have been 50 feet of unpaved land on either side of the guy wire. However, Warju disagreed with this approach: "[H]e made us form it to the guy wire. He told me not to form it like that. He told me go right up to the guy wire and just leave one flag out." Rosalino said that he did as Warju asked, but warned that it was not a good idea because "people could get hurt over here, with this wire being here." Salvatore also said that he warned Warju many times about the hazard of cementing up to the wire. At his deposition, Warju explained that he ordered Salvatore to pave up to the guy wire because he was on a schedule: "Well, we are on a schedule to do the sidewalk. We are coming down that street. We are not going to stop and wait for nine months in this case for Detroit Edison to relocate their wire along with other objects which are in the way."

Salvatore said that they had prepared the area around the guy wire for cementing, but left it unpaved. Later Warju instructed them to fill with asphalt the gap left at the point where the guy wire was anchored to the ground.

Salvatore said that he protested that the "wire still [hadn't] been moved," but Warju replied, "[J]ust put it there, and then next year when you guys come back, you guys can fill it in with the concrete." Salvatore said that he warned Warju that if they put asphalt in there, people were going to just "kick over our barricades and walk through." He said that Warju told him not to "worry about it, we'll just keep an eye on it." Danielson testified that the city does not have a policy that construction should be halted because of a conflict with a utility; rather, the proper procedure is to barricade the area.

According to an inspection report, Gaglio Cement paved the area between the cement portions of the sidewalk with asphalt on July 22, 2005. Photographs of the anchor for the guy wire show that the anchor was actually in the asphalt and the wire crossed the path of the sidewalk at an angle to the telephone pole.

Rosalino said that Warju made them surround the area with barricades. He placed the barricades in such a way that the sidewalk "wasn't useable in between that area." Unfortunately, people kept taking the barricades and throwing them. For that reason, he reemphasized that Warju had to move the wire because the barricades "are missing every day." He said that Royal Oak even sent others to barricade the location. Rosalino said that the problem persisted even after they completed working for the summer and returned in the spring of 2006: "And I told Bryan [Warju], it's like that wire's still there, it's been eight months now. I was like why is that wire still there. I was like you gotta move that wire, 'cause they're taking the barricades and we just put more barricades there."

Douglas Burg testified at his deposition that he was a lineman with Detroit Edison and that he was dispatched to Normandy Street on April 24, 2006, regarding a report of a bicyclist who had struck a guy wire. When he arrived there were no emergency personnel and no injured person, but he noticed that the plastic guard for the guy wire was on the ground some feet from the guy wire. He reattached the guy wire guard after tightening some of the lines. After this, he called his dispatch center and instructed them to have a service planner schedule a project to move the guy wire as soon as possible. He wrote a note that stated: "At the lead south of Normandy, 10 poles east of Crooks a guy ran into the down guy on his bike. We looked at it and it does need a sidewalk guy to stop decapitating pedestrians. Needs service planning." Burg said that he was so concerned about the wire that, if he had had the right crew with him, he would have asked for permission to move the wire immediately.

McBeth testified that he received a memo about a potential problem with a guy wire on Normandy Street. He acknowledged that the memo had stated that the area needed a sidewalk guy in order for the guy wire to stop decapitating pedestrians. McBeth said that he got the memo on May 4, 2006, and went to the site the same day. He said that he was concerned about the guy wire and let his supervisor know that the guy wire needed to be moved as soon as possible. Indeed, McBeth said that he turned the job package in the same day and told his supervisor that he had short-dated it, meaning that it should be done in two weeks rather than the normal six weeks, which he thought was warranted by the seriousness of the situation.

David Colling testified at his deposition that his daughter Lara fell and injured herself while riding her bicycle by the area of the guy wire at issue. He stated that Lara had her accident in May 2006 before the accident at issue here and that the accident happened around four or five o'clock in the afternoon.

At approximately 11:00 p.m. on May 24, 2006, John Crnkovich rode a small scooter equipped with a gas motor down the sidewalk on the south side of Normandy Street. A bicyclist stated that he had ridden past Crnkovich, who he thought was moving at a high rate of speed given the high-pitched sound of the engine, on the sidewalk going in the opposite direction. The bicyclist said that when he got to the driveway of the adjacent school, he heard a crash. He turned around and went back, where he saw that Crnkovich had hit the guy wire. He said that Crnkovich was bleeding from his neck and was unresponsive. The bicyclist stated that a motorist stopped and called for help. Crnkovich died from his injuries.

The pathologist who conducted the autopsy indicated that Crnkovich, who was 35 years old and 253 pounds at the time, had died from blunt-force trauma to his neck and head. The pathologist specifically noted that Crnkovich had "[s]eparation of C3 from C4 with transection of the spinal cord." The pathologist also noted that Crnkovich had been under the influence of alcohol and marijuana at the time of his death. According to a toxicology report, Crnkovich had 0.13 g/dl of ethyl alcohol in a blood sample from his femoral artery and 4 ng/ml of delta-9-tetrahydrocannabinol and 13 ng/ml of delta-9-carboxy-tetrahydrocannabinol in a blood sample from his heart.

## B. PROCEDURAL HISTORY

In June 2007, Thomas LaMeau, the personal representative of Crnkovich's estate, sued Royal Oak and Detroit Edison for damages arising out of Crnkovich's death. LaMeau amended the complaint to state new claims and eventually to state claims against Gaglio Cement, Danielson, and Warju. For the first count of his third amended complaint, LaMeau alleged that Detroit Edison had negligently placed, maintained, and failed to move its utility pole and guy wire and that this negligence caused Crnkovich's death. In the second count, LaMeau alleged that Royal Oak had a duty to maintain its sidewalks in reasonable repair and that it had breached that duty by embedding the guy wire anchor in the sidewalk, which breach caused Crnkovich's death. LaMeau alleged in the third count that Gaglio Cement had breached its duty to perform its contract with Royal Oak in a proper and workmanlike manner by building an unsafe sidewalk that ultimately caused Crnkovich's death. LaMeau also alleged various nuisance claims in counts 4 through 9. In counts 10 and 11,

respectively, LaMeau alleged that Danielson and Warju had been grossly negligent in planning and constructing the sidewalk at issue and that their gross negligence caused Crnkovich's death.

Royal Oak moved for summary disposition of LaMeau's claims in October 2008. Royal Oak argued that it was entitled to summary disposition because LaMeau had failed to plead claims in avoidance of governmental immunity. Specifically, Royal Oak argued that the guy wire and anchor were part of the telephone pole and, therefore, were expressly excluded from the definition of a highway for purposes of the highway exception to governmental immunity.

Gaglio Cement also moved for summary disposition in October 2008. Gaglio Cement argued that LaMeau had failed to allege that it breached a duty owed to Crnkovich beyond the duty arising under its contract with Royal Oak. It also argued that LaMeau's claims were barred because Crnkovich had been more than 50 percent at fault and had been under the influence of alcohol and marijuana.

In December 2008, Danielson and Warju moved for summary disposition, in part, on the ground that LaMeau's claims against them were barred by governmental immunity. Specifically, they argued that their actions with regard to the construction of the sidewalk did not rise to the level of gross negligence and were not "the" proximate cause of Crnkovich's injuries.

On January 5, 2009, the trial court signed an opinion and order in which it addressed the motions by Royal Oak and Gaglio Cement. The trial court granted the motions with regard to the nuisance claims, but denied the motions with regard to the individual negligence claims against Royal Oak and Gaglio Cement.

On January 7, 2009, Royal Oak again moved for summary disposition, along with Danielson and Warju. In this motion, Royal Oak and its employees argued that LaMeau had failed to establish that the sidewalk itself caused Crnkovich's injuries. Rather, they argued, Crnkovich's own reckless behavior was the cause of his injuries. They also argued that there were superseding intervening causes that precluded LaMeau's claims against them:

> 1) [Crnkovich's] careless and illegal behavior; 2) [Detroit Edison's] failure to respond to [Royal Oak's] request to relocate the wire . . . ; 3) The unknown person(s) removing the barricades, barrels, and yellow safety tape and/or sleeve; and, 4) Gaglio's alleged failure to determine if the barrels were in place on May 24, 2006.

Finally, Royal Oak, Danielson, and Warju argued that Crnkovich's wrongful conduct and intoxication barred LaMeau from recovering as a matter of law.

Royal Oak appealed as of right the trial court's denial of its motion for summary disposition founded on governmental immunity on January 26, 2009. This Court assigned that appeal Docket No. 290059.[1] Royal Oak's appeal automatically stayed the proceedings below. See MCR 2.614(D). On February 10, 2009, Royal Oak filed a motion asking this Court to permit the trial court to conduct a hearing on pending motions for rehearing and summary disposition. This Court entered an order for remand on March 31, 2009.[2]

---

[1] This Court granted Gaglio Cement leave to appeal the trial court's decision to deny its motion for summary disposition and consolidated that appeal with the appeal in Docket No. 290059. *LaMeau v Royal Oak,* unpublished order of the Court of Appeals, entered May 12, 2009 (Docket No. 289947).

[2] *LaMeau v Royal Oak,* unpublished order of the Court of Appeals, entered March 31, 2009 (Docket No. 290059).

On April 29, 2009, the trial court entered an opinion and order denying Danielson and Warju's motion for summary disposition premised on governmental immunity. In a separate opinion and order entered on the same day, the trial court denied a motion for reconsideration filed by Royal Oak, Danielson, and Warju.

Danielson and Warju appealed the trial court's decision to deny their motion for summary disposition on May 11, 2009. This Court assigned that appeal Docket No. 292006.[3]

## II. GOVERNMENTAL IMMUNITY

### A. STANDARDS OF REVIEW

On appeal, Royal Oak, Danielson, and Warju primarily argue that the trial court erred when it determined that LaMeau's claims against them were not barred by governmental immunity and, for that reason, denied their motions for summary disposition under MCR 2.116(C)(7), (8), and (10). This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo the proper interpretation of statutes. *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 483; 722 NW2d 906 (2006).

A trial court properly grants summary disposition under MCR 2.116(C)(7) when a claim is barred by immunity granted by law. A party may support or defend a motion under MCR 2.116(C)(7) by affidavits,

---

[3] This Court consolidated the appeals in Docket Nos. 289947, 290059, and 292006 in an unpublished order, entered May 28, 2009, but on April 29, 2010, entered an unpublished order that closed without prejudice the appeal in Docket No. 289947 and deconsolidated that appeal from the other appeals.

depositions, admissions, or other documentary evidence. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). This Court reviews the evidence in the light most favorable to the nonmovant to determine whether a plaintiff's claim is barred by immunity. *Zwiers v Growney*, 286 Mich App 38, 42; 778 NW2d 81 (2009). If the submissions demonstrate that there is a factual dispute as to whether immunity applies, summary disposition is not appropriate. *Id.*

A motion for summary disposition brought under MCR 2.116(C)(8) tests the "legal sufficiency of the complaint on the allegations of the pleadings alone." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). When reviewing a motion under MCR 2.116(C)(8), this Court accepts all well-pleaded allegations as true and construes them in a light most favorable to the nonmovant. *Maiden*, 461 Mich at 119. Summary disposition under MCR 2.116(C)(8) is appropriate only when the claims alleged are so clearly unenforceable that no factual development could justify recovery. *Maiden,* 461 Mich at 119.

A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden*, 461 Mich at 120. A party may be entitled to summary disposition under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact . . . ." This Court reviews a motion brought under this subsection by considering the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion to determine whether there are genuine issues of material fact. *Maiden*, 461 Mich at 120.

### B. THE HIGHWAY EXCEPTION

Under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, a governmental agency is "im-

mune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). It is undisputed that Royal Oak is a governmental agency, see MCL 691.1401(b) and (d), and that its construction of the sidewalk at issue constituted the exercise of a governmental function. Thus, unless one of the statutory exceptions to immunity applies to this case, Royal Oak is immune from tort liability arising from its construction of the sidewalk.

One exception to the immunity provided by MCL 691.1407(1) is the highway exception to governmental immunity. Under MCL 691.1402(1), every "governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." Further, a person

> who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. [*Id.*]

The Legislature provided that "highway" means "a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway." MCL 691.1401(e). Hence, Royal Oak may be liable if it breached its duty under MCL 691.1402(1) to keep the sidewalk in reasonable repair.

Although Royal Oak concedes that it had a duty to maintain the sidewalk at issue in reasonable repair, it argues that the sidewalk itself was not defective. Rather, the problem was with the placement of the anchor for the guy wire and the guy wire that supported

a nearby telephone pole. Because the guy wire and its anchor are by definition not part of the highway, Royal Oak argues that it cannot be held liable for the dangerous placement of the anchor and guy wire. Royal Oak relies on MCL 691.1401(e) to support its contention that the improper placement of the anchor and guy wire at issue cannot give rise to liability because those structures are never part of a highway.

### 1. DEFINITION OF "HIGHWAY"

MCL 691.1401(e) defines the term "highway" to broadly include public highways, roads, and streets that are "open for public travel . . . ." It also clarifies that certain structures that are "on the highway" are included within the definition: "bridges, sidewalks, trailways, crosswalks, and culverts . . . ." *Id.* It also defines highway as not including one type of thoroughfare— "alleys"—and as not including "trees" and "utility poles," even though trees and utility poles will often be located within the right-of-way of a highway. *Id.*

In this case, Crnkovich died when he struck a guy wire that was strung across Royal Oak's sidewalk and connected to an anchor embedded in the sidewalk at one end and a utility pole at the other end. Thus, the question becomes whether the exclusion of utility poles from the definition of "highway" insulates Royal Oak from liability for paving the sidewalk through the anchor and under the guy wire with insufficient clearance for persons using the sidewalk.

The definition of the term "highway" has no operative effect outside the substantive provisions of the GTLA—that is, the definition must be interpreted in light of the provisions of the statute that impose liability. MCL 691.1402(1) imposes a duty on municipalities to maintain their highways "in reasonable repair . . . ."

Therefore, the definition of a highway is integral to understanding what the municipality must maintain in reasonable repair; it must maintain its public highways, roads, and streets in reasonable repair, and it must maintain the bridges, sidewalks, trailways, crosswalks, and culverts that are associated with those highways in reasonable repair. In contrast, a municipality does not have a duty to maintain alleys in reasonable repair and does not have a duty to maintain in reasonable repair trees and utility poles that may be within the highway right-of-way. However, the fact that a municipality does not have a duty to maintain utility poles in reasonable repair does not relieve the municipality of its duty to maintain its sidewalks in reasonable repair even when a utility pole causes the sidewalk's state of disrepair. Thus, assuming—without actually deciding—that the anchor and guy wire constitute "utility poles" within the meaning of MCL 691.1401(e), Royal Oak nevertheless had a duty to make reasonable repairs to its sidewalk that were occasioned by the anchor and guy wire.[4]

Under these facts,[5] the anchor and guy wire were part of the sidewalk. This case does not involve conditions that are external to the sidewalk, such as snow, ice, or an oil spill. See *Buckner Estate v City of Lansing*, 480 Mich 1243, 1244 (2008) (explaining that "the accumulation, by itself, of ice and snow on a sidewalk, regardless of whether it accumulated through natural causes or otherwise, does not constitute a 'defect' in the sidewalk"). This case involves a physical structure

---

[4] For example, if a utility pole fell and seriously damaged a sidewalk, the fact that the defect in the sidewalk was caused by a utility pole would not relieve the municipality of any liability arising from its failure to remedy the defect.

[5] At oral argument, the parties acknowledged that this case involved unique facts and an issue of first impression.

in the sidewalk itself. Further, the structure is not a fixture that was attached to the sidewalk after the sidewalk's construction. See *Ali v Detroit*, 218 Mich App 581, 589; 554 NW2d 384 (1996) (holding that the definition of "highway" does not include fixtures, such as a bus passenger shelter, that are "linked with the sidewalk solely by its placement"). Rather, the anchor and guy wire were in place *before* the construction of the sidewalk. And Royal Oak decided to construct the sidewalk in such a way as to incorporate the guy wire and its anchor into the sidewalk. Once Royal Oak decided to pave through the guy wire and anchor, the fact that the anchor and guy wire were also attached to a utility pole become irrelevant because the anchor and guy wire were, at that point, part of the sidewalk.[6]

For these reasons, we reject Royal Oak's argument that MCL 691.1402(1) must be narrowly construed to exclude the defect at issue. Although this Court must construe the exceptions to governmental immunity narrowly, *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000), this Court is not at liberty to ignore the plain language of the statute under the guise of interpreting it narrowly, see *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005), and MCL 691.1402(1) plainly and unequivocally imposes liability on municipalities for defects in sidewalks—even if the defect in the sidewalk is occasioned by the presence of a structure that the municipality would normally not have a duty to maintain in reasonable repair.

---

[6] By way of example, if Royal Oak's contractors had left a work boot in a freshly poured concrete slab with one half submerged and the other half protruding above the level of the concrete, the boot would be part of the sidewalk, so that Royal Oak would be liable for harms caused by the failure to remedy the defect.

### 2. JURISDICTION

Royal Oak also argues that it did not have jurisdiction over the anchor and guy wire at issue. However, Royal Oak admitted that it had jurisdiction over the sidewalk and, once it chose to incorporate the anchor and guy wire into its sidewalk, it necessarily acquired jurisdiction over the anchor and guy wire to the extent that they were part of the sidewalk. See MCL 691.1401(e); MCL 691.1402(1). Moreover, the fact that Royal Oak did not have the equipment or expertise to relocate the anchor and guy wire did not relieve it of its duty to rectify the defective condition; had Royal Oak wanted to avoid responsibility for the anchor and guy wire, it could simply have elected not to incorporate those structures into its sidewalk. Indeed, if Royal Oak had followed the advice of its own contractor and left several flags on either side of the anchor and guy wire unpaved—or even left the flag at issue unpaved—Royal Oak would have had no duty with regard to the anchor and guy wire. See MCL 691.1401(e).

### 3. OPEN TO THE PUBLIC

Contrary to Royal Oak's contention, the evidence did not demonstrate that the sidewalk at issue was closed to the public. See *Pusakulich v Ironwood*, 247 Mich App 80, 85-86; 635 NW2d 323 (2001) (noting that a governmental agency can suspend its duty to keep a highway in good repair by closing it to public traffic). Royal Oak presented evidence that it had Gaglio Cement barricade the flag at issue to prevent the general public from using the sidewalk at the point where it crossed under the guy wire. However, the evidence also showed that the remainder of the new sidewalk was open to the public and that Royal Oak ordered Gaglio Cement to pave the missing sidewalk flag with asphalt. Likewise,

the evidence showed that the barricades were routinely moved or stolen from the location, and there was evidence from which reasonable persons could conclude that there were no barriers in place on the date at issue. Under the totality of the circumstances, whether Royal Oak had closed the sidewalk to the public is a question of fact.

### 4. THE TWO-INCH RULE

Royal Oak also argues that LaMeau's claims are barred under MCL 691.1402a. However, our Supreme Court recently explained that the limitations stated under MCL 691.1402a(2) apply only to sidewalks that are adjacent to a county highway. *Robinson v City of Lansing*, 486 Mich 1, 21-22; 782 NW2d 171 (2010). In this case, there was no evidence that the sidewalk at issue was adjacent to a county highway. Therefore, MCL 691.1402a(2) does not apply to the street at issue. Further, even if MCL 691.1402a(2) could be said to apply under the facts of this case, the rebuttable inference provided under that statute applies only to "a discontinuity defect" in a sidewalk. Because this case does not involve a discontinuity defect, that presumption does not apply.

### 5. NOTICE

Finally, Royal Oak argues that LaMeau's claims are barred under MCL 691.1403 because it did not have the required 30-day notice of the defect. Specifically, Royal Oak contends that LaMeau had to show that Royal Oak had notice that the barricades were missing before the accident at issue. Royal Oak's argument that it had to have notice that the barricades were missing is unpersuasive. MCL 691.1403 requires notice of a defect in the highway—not the absence of barricades warding trav-

elers from the defect. The undisputed evidence in this case showed that Royal Oak was not only aware of the defective condition, its employees actually *created* the defective condition. See *Wilson v Alpena Co Rd Comm*, 263 Mich App 141, 149; 687 NW2d 380 (2004) (noting that a governmental agency's employee's knowledge of a defect will be imputed to the agency). Further, knowledge of the defect is "conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place." MCL 691.1403. The evidence in this case showed that the extreme danger posed by the defective condition of the sidewalk—that is, the anchor and guy wire—was "readily apparent" for the requisite 30 days. And, in any event, there was evidence that even after Royal Oak created the defective condition, its contractor repeatedly warned it about the continuing hazard from the anchor and guy wire. Finally, there was clear evidence that Royal Oak had notice that a bicyclist had fallen after encountering the guy wire over the sidewalk. Accordingly, there is no dispute that Royal Oak had adequate notice of the defect for purposes of MCL 691.1403.

### 6. CONCLUSION

Royal Oak had a duty under the highway exception to rectify the defect that it created in the sidewalk after it decided to pave the sidewalk through the anchor and, thereby, incorporate the anchor and guy wire into the sidewalk. MCL 691.1402(1). Therefore, the trial court did not err when it denied Royal Oak's motion for summary disposition that alleged that Royal Oak was immune from suit. Given the conclusion that Royal Oak could be liable under MCL 691.1402(1) for the actual defect at issue, the anchor and guy wire incorporated

into the sidewalk, we decline to consider whether Royal Oak could be liable under a failure-to-warn or negligent-design theory.

### C. IMMUNITY FOR GOVERNMENTAL EMPLOYEES

On appeal, Danielson and Warju argue that the trial court also erred when it refused to dismiss LaMeau's claims against them on the ground that they were entitled to governmental immunity. Under MCL 691.1407(2), certain classes of persons working for governmental agencies are immune from tort liability if all the following are true:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

The first two criteria are not at issue. Rather, Danielson and Warju only argue that their actions did not amount to gross negligence and, even if they did, their actions did not amount to "the" proximate cause of Crnkovich's injuries.

### 1. GROSS NEGLIGENCE

In order to survive a motion for summary disposition premised on the immunity afforded to governmental employees, the plaintiff must present evidence sufficient for a reasonable finder of fact to conclude that the employee was grossly negligent. If there is no question of fact about whether the allegedly negligent conduct rises to the level of gross negligence, the court may

decide the question as a matter of law. Evidence of
ordinary negligence will not be sufficient to survive a
motion for summary disposition. *Maiden*, 461 Mich 122-
123 ("[E]vidence of ordinary negligence does not create a
material question of fact concerning gross negligence.");
see also *Costa v Community Med Servs, Inc*, 475 Mich
403, 411; 716 NW2d 236 (2006) (noting that the gross-
negligence exception applies to situations "in which the
contested conduct was substantially more than negli-
gent"). Rather, there must be evidence that the employee
engaged in "conduct so reckless as to demonstrate a
substantial lack of concern for whether an injury results."
MCL 691.1407(7)(a); see also *Maiden*, 461 Mich at 123.

On appeal, Danielson and Warju frame the issue in
terms of their conduct after the construction of the
sidewalk at issue. That is, they argue that the evidence
concerning the steps that they took to barricade the
sidewalk and to get Detroit Edison to move the anchor
and guy wire did not show that their conduct rose to the
level of gross negligence; instead, they contend that "[i]f
such a minor level of negligence is sufficient to avoid
immunity, immunity for individuals based upon gross
negligence would be undermined, if not abrogated."
However, the proper focus is not solely on the evidence
concerning the steps they took *after* creating the defect
in the sidewalk. Rather, the totality of their conduct—
including their actions leading to the creation of the
defect in the sidewalk as well as the steps they took to
remediate the defect—must be evaluated when deter-
mining whether their actions could be found to amount
to gross negligence. Indeed, if the defect had not been
created in the first instance, then there would have
been no need to remediate it.

Although the sidewalk project called for the place-
ment of the sidewalk through the area occupied by the

anchor and guy wire, the decision to place the sidewalk along this path was not inherently negligent—let alone grossly negligent—given that the anchor and guy wire could have been relocated.[7] Indeed, there was evidence that another utility was able to timely move its own anchor and guy wire. However, once Gaglio Cement began to prepare the area and pour concrete flags, both Rosalino and Salvatore Gaglio noticed that the anchor and guy wire had not been relocated and informed Warju of the need to move it. Nevertheless, Warju ordered them to proceed with the project and told them to just block the area off. Rosalino disagreed with this course and urged Warju to leave a substantial distance—50 feet in either direction— unpaved for safety purposes. Despite Rosalino's protestation that people would get hurt, Warju told them to pave right up to the anchor and guy wire and leave just one flag unpaved.

Sometime later, Warju asked Salvatore to fill the missing flag with asphalt. Salvatore again warned Warju against paving the area before the guy wire was relocated, but Warju said, "[J]ust put it there, and then next year when you guys come back, you guys can fill it in with the concrete." Salvatore said that he also warned Warju that if they put asphalt in there, people were just going to "kick over our barricades and walk through." He said that Warju told him not to "worry about it, we'll just keep an eye on it."

When asked whether Warju could have halted the project to await the relocation of the anchor, Danielson

---

[7] By pointing out this fact, we do not mean to imply that the negligent design of a highway or sidewalk might be actionable—it is now settled that design defects are not actionable. See *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 502-504; 638 NW2d 396 (2002). As already noted, this case involves a physical defect in the surface of the sidewalk occasioned by the incorporation of the anchor and guy wire into the sidewalk during construction; it does not involve a defect in the design or layout of the sidewalk.

admitted that he could have done so, but explained that there was no policy requiring that. Instead, he said the proper procedure is to complete the project and barricade the hazard area. Similarly, when asked to explain why he did not leave the area unpaved, Warju explained: "Well, we are on a schedule to do the sidewalk. We are coming down that street. We are not going to stop and wait for nine months in this case for Detroit Edison to relocate their wire along with other objects which are in the way."

The testimony concerning the events leading up to the creation of the hazard strongly suggested that Danielson and Warju were indifferent to the magnitude of the danger being created. The anchor and guy wire posed a clear danger even to pedestrians traversing the paved portion of the sidewalk. Yet the danger increased dramatically for persons moving at any speed greater than a walk—the location of the fence on one side and of wires and poles on the other made it difficult for any person moving at such a speed to avoid the hazard, and the height of the guy wire rendered anyone who failed to avoid it in danger of sustaining a head or neck injury. Given this evidence, Danielson and Warju should have realized the seriousness of the hazard they were creating by ordering that the sidewalk be paved before moving the anchor and guy wire. On the basis of this evidence, a reasonable jury could conclude that the decision to incorporate the anchor and guy wire into the sidewalk demonstrated "a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a); *Maiden*, 461 Mich at 122-123 (stating that, in order to survive a motion for summary disposition premised on governmental immunity for governmental employees, a plaintiff must adduce proof of conduct so reckless that it demonstrates a substantial lack of concern for whether an injury will result). Even if Danielson and Warju did

not fully appreciate the danger, the evidence also showed that they were repeatedly warned about the danger posed by paving up to the anchor and guy wire, yet ordered Gaglio Cement to proceed anyway.

Further, although there was evidence that Danielson and Warju contacted Detroit Edison about moving the anchor and guy wire, the evidence also suggested that Danielson's and Warju's efforts in this regard were deficient. Neither Danielson nor Warju ever formally requested Detroit Edison to relocate the anchor and guy wire. Warju did send a letter to Detroit Edison advising it of a meeting concerning the project, and in the letter he noted that any conflicts with utilities would be discussed at the meeting, but he addressed the letter to a person who was not located at the office to which the letter was addressed and who was not responsible for resolving utility conflicts. Likewise, although Danielson testified that he contacted various Detroit Edison personnel about moving the anchor and guy wire, he admitted that the requests were oral, and the evidence showed that some of these communications occurred during discussions about other projects. In addition, there was evidence from which one could conclude that Detroit Edison did not receive any requests—oral or otherwise—to move the anchor and guy wire. Thus, there was evidence from which a reasonable fact-finder could conclude that the efforts to have the anchor and guy wire relocated were not just deficient, but grossly deficient.

The evidence also showed that Danielson's and Warju's efforts to safeguard the public from the hazard they created were inadequate. Although there was evidence that the sidewalk was barricaded at the point of the hazard, there was also evidence that the barricades were repeatedly moved or stolen. Rosalino testified that he warned Warju over and over again about the problem

with the barricades and told him that the guy wire had
to be moved; he even expressed exasperation over the
fact that the guy wire had not been moved after eight
months. Moreover, the photographs from the accident
at issue showed no sign of any barricade within the
vicinity of the anchor and guy wire. There was also
evidence that the general public was using the sidewalk
before the accident at issue. The evidence showed that
two bicyclists were injured while encountering the
hazard and that Royal Oak clearly had notice of one of
those accidents because its fire department responded
and generated a report about the guy wire at issue.

When the totality of the evidence and the testimony
concerning the events at issue is viewed in a light most
favorable to LaMeau, there is a clear question of fact
about whether Danielson and Warju were grossly neg-
ligent. The evidence showed that Danielson and Warju
created the hazard at issue by paving a path right up to
and including the anchor and guy wire notwithstanding
the evident serious danger. The evidence also showed
that their efforts to have the anchor and guy wire
moved were deficient and untimely, and that they
ignored the fact that the barricades were inadequate
and that the general public was using the sidewalk.
Taken together, this conduct could be found to be "so
reckless as to demonstrate a substantial lack of concern
for whether an injury results." MCL 691.1407(7)(a).
Accordingly, the trial court did not err when it con-
cluded that there was evidence from which a finder of
fact could conclude that Danielson and Warju were
grossly negligent.

### 2. "THE" PROXIMATE CAUSE

Danielson and Warju also argue that, even assuming
that there is a question of fact about whether their

conduct rose to the level of gross negligence, they are nevertheless entitled to immunity because there is no question of fact regarding whether their conduct was "the" proximate cause of Crnkovich's injuries. The Legislature has provided that a governmental employee is immune from tort liability unless his or her conduct amounted "to gross negligence" and that gross negligence was *"the* proximate cause of the injury or damage." MCL 691.1407(2)(c) (emphasis added). Our Supreme Court has held that the Legislature's reference to "the proximate cause"—as opposed to "a proximate cause"—means that the employee's gross negligence must be more than just a proximate cause of the injury in order to meet the requirements of the exception to the governmental employee's immunity. See *Robinson v Detroit*, 462 Mich 439, 461-463; 613 NW2d 307 (2000). Instead, a governmental employee is immune from tort liability unless his or her conduct amounted to gross negligence that was "the one most immediate, efficient, and direct cause of the injury or damage . . . ." *Id.* at 462.

On appeal, Danielson and Warju argue that Detroit Edison negligently failed to move the anchor and guy wire after Warju and Danielson requested removal and after receiving notice of the accident involving the bicyclist. They also argue that Crnkovich himself was largely at fault for his own accident. Specifically, they note that Crnkovich illegally rode the motor scooter on the sidewalk and that he did so at night, without appropriate safety equipment, at a high rate of speed, and while under the influence of alcohol and marijuana. They also fault Gaglio Cement for not taking better steps to ensure that the area was properly barricaded and fault unknown persons for removing the barricades. On the basis of this evidence, Danielson and Warju contend that—even if their conduct were deemed

grossly negligent—their conduct was clearly not the one most immediate, efficient, and direct cause of Crnkovich's injuries.

In the present case, there was evidence from which a reasonable jury could conclude that Crnkovich's conduct was the one most immediate, efficient, and direct cause of his injuries. He elected to ride the motor scooter at night, without protective gear, and after having ingested alcohol and marijuana at some prior point. However, there was also evidence from which a reasonable jury could conclude that the conduct of Danielson and Warju in creating the hazard at issue and then failing to rectify or mitigate the hazard constituted the one most immediate, efficient, and direct cause of Crnkovich's injuries. Danielson and Warju were responsible for the decision to pave the sidewalk directly up to and including the anchor and guy wire. And a reasonable jury could conclude that, had Warju halted the project or followed Rosalino's advice to leave 50 feet of land unpaved on either side of the anchor and guy wire, Crnkovich could not have operated his small motor scooter on the unpaved land or that, if he had traversed the unpaved land, he could not have had a catastrophic collision with the anchor and guy wire. In addition, a reasonable jury could conclude that it was Danielson's and Warju's failure to formally request the relocation of the anchor and guy wire that caused Detroit Edison to be unable to move the anchor and guy wire in time to prevent the accident. Indeed, the evidence supported an inference that Detroit Edison was not aware of the changed circumstances involving the anchor and guy wire—namely, that Danielson and Warju had paved through the anchor and under the guy wire and, thereby, created a far more hazardous condition than previously existed, a condition that only then urgently required Detroit Edison's intervention. As for Gaglio Cement's alleged failure to properly barricade the site, the evidence showed that Gaglio Ce-

ment contracted with Royal Oak under the supervision of Danielson and Warju. There was also evidence that Salvatore warned Warju that barricading the site would not prevent injuries and that the barricades would likely be removed. Rosalino also informed Warju about the problem with the barricades and urged him to ensure that the guy wire got relocated. From this, a reasonable jury could conclude that the failure to have barricades in place was attributable to the conduct of Danielson and Warju or was not a significant cause of Crnkovich's injuries.

In light of the evidence before the trial court, a question of fact clearly existed regarding the one most immediate, efficient, and direct cause of Crnkovich's injuries.

### 3. CONCLUSION

Considering the evidence presented to the trial court, a reasonable jury could conclude that the acts of Danielson and Warju in ordering the paving of the area up to and including the anchor and guy wire, as well as their failure to have the anchor and guy wire relocated and properly barricaded, amounted to gross negligence. Likewise, a reasonable jury could conclude that the one most immediate, efficient, and direct cause of the injuries at issue was Danielson's and Warju's grossly negligent conduct. MCL 691.1407(2)(c); MCL 691.1407(7)(a); *Robinson*, 462 Mich at 462. Accordingly, the trial court did not err when it denied Danielson and Warju's motion for summary disposition premised on governmental immunity.

### III. GENERAL CONCLUSION

The trial court correctly determined that Royal Oak, Danielson, and Warju were not entitled to governmental immunity under the facts of this case. For that

reason, it did not err when it denied their motions for summary disposition on that basis.

Affirmed.

FITZGERALD, J., concurred.

TALBOT, P.J. (*dissenting*). I respectfully dissent from the majority's opinion and would reverse the trial court's denial of defendants' motions for summary disposition based on their assertion of governmental immunity.

This lawsuit arises from an accident that occurred on May 24, 2006, at 11:00 p.m., on a sidewalk of defendant city of Royal Oak (the City). At that time, plaintiff Thomas LaMeau's decedent, John M. Crnkovich, died of blunt-force head and neck trauma after striking a guy[1] wire that was strung at an angle from a utility pole of defendant Detroit Edison Company (DTE) across the sidewalk and anchored on the opposite side of the sidewalk. It is undisputed that, at the time of the accident, the decedent was riding a motorized scooter, without benefit of lights or a helmet, and had a blood alcohol level of 0.13 g/dl in addition to the presence of cannabinoids in his system. Defendant Gaglio PR Cement Corporation (Gaglio)[2] had a contract with the City for installation of the sidewalk where this accident occurred. Defendants Elden Danielson and Bryan Warju are engineers employed by the City, involved in the design, placement, and oversight of the construction project for the sidewalk.

---

[1] The parties and the record alternatively referred to this as a "guy wire" or "guide wire."

[2] Gaglio filed an appeal in this matter (Docket No. 289947), which has been closed without prejudice pending bankruptcy proceedings. *LaMeau v Royal Oak*, unpublished order of the Court of Appeals, entered April 29, 2010 (Docket Nos. 289947, 290059, and 292006).

This Court reviews de novo a trial court's grant or denial of a motion for summary disposition. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). A motion for summary disposition brought pursuant to MCR 2.116(C)(10) serves to test the factual sufficiency of the claims. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). In accordance with MCR 2.116(C)(10), the moving party is entitled to a grant of summary disposition upon a successful demonstration that no genuine issue of material fact exists. *Coblentz v City of Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006). Mere speculation and conjecture cannot give rise to a genuine issue of material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 371-372; 547 NW2d 314 (1996). A motion for summary disposition brought in accordance with MCR 2.116(C)(8) tests the legal sufficiency of the allegations claimed in the pleadings. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). In contrast, when deciding a motion under MCR 2.116(C)(7), a court must consider the pleadings, admissions, affidavits, and other documentary evidence within the record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists, which would necessitate the conduct of a trial. See *Amburgey v Sauder*, 238 Mich App 228, 231; 605 NW2d 84 (1999).

The issues raised by defendants concern the applicability of governmental immunity. In general, governmental agencies are deemed to be immune from tort liability for actions taken in furtherance of their governmental functions. MCL 691.1407(1). "[T]he immunity conferred upon governmental agencies is *broad,* and the statutory exceptions thereto are to be *narrowly* construed." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000). A "governmental function" has been defined to encompass "an activity . . . expressly or impliedly mandated or authorized

by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(f). The fact that the City's construction of a sidewalk comprises a governmental function is not in dispute.

The City is immune from liability while engaged in a governmental function, unless a statutory exception is found to be applicable. The only exception alleged to be at issue under the circumstances of this case is the highway exception, MCL 691.1402(1), which provides, in relevant part:

> Except as otherwise provided in [MCL 691.1402a], each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.

Of particular relevance is the term "highway," defined in MCL 691.1401(e) as follows: "[A] public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles."

As discussed by our Supreme Court in *Buckner Estate v City of Lansing*, 480 Mich 1243, 1244 (2008): "The term 'highway' includes 'sidewalks.' MCL 691.1401(e). In order to show that a governmental agency failed to 'maintain [a] highway in reasonable repair,' a plaintiff must demonstrate that a 'defect' exists in the highway." (Citations omitted.)[3] Because the parties do not dispute jurisdic-

---

[3] "We treat the Supreme Court's order as binding precedent . . . ." *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*, 275 Mich App 290, 304 n 3; 739 NW2d 392 (2007).

tion in this matter, the issue that must be resolved is whether the guy wire strung across the sidewalk comprises a "defect," as contemplated by the statute. Plaintiff contends that the guy wire was anchored into the sidewalk and thus is part of its construction and constitutes a defect. In contrast, the City argues that the guy wire is part of the utility pole owned by and under the jurisdiction of DTE, which is specifically excluded from the definition of the term "highway," pursuant to MCL 691.1401(e). As such, neither the pole nor the wire that extends from it is part of the sidewalk and, therefore, comprises an exception for purposes of immunity. In addition, the City cites MCL 691.1402a, which provides, in relevant part:

> (1) Except as otherwise provided by this section, a municipal corporation has no duty to repair or maintain, and is not liable for injuries arising from, a portion of a county highway outside of the improved portion of the highway designed for vehicular travel, including a sidewalk, trailway, crosswalk, or other installation. This subsection does not prevent or limit a municipal corporation's liability if both of the following are true:

> (a) At least 30 days before the occurrence of the relevant injury, death, or damage, the municipal corporation knew or, in the exercise of reasonable diligence, should have known of the existence of a defect in a sidewalk, trailway, crosswalk, or other installation outside of the improved portion of the highway designed for vehicular travel.

> (b) The defect described in subdivision (a) is a proximate cause of the injury, death, or damage.

> (2) A discontinuity defect of less than 2 inches creates a rebuttable inference that the municipal corporation maintained the sidewalk, trailway, crosswalk, or other installation outside of the improved portion of the highway designed for vehicular travel in reasonable repair.

Specifically, the City contends that any "defect" must be in the materials or construction actually comprising the sidewalk, which plaintiff cannot demonstrate and has not alleged. See MCL 691.1402a(2). Plaintiff responds that MCL 691.1402a(2) is not applicable because a "discontinuity defect" is not at issue. However, plaintiff contends that MCL 691.1402a(1) does impose liability.

The initial matter to be resolved is whether the term "defect" encompasses the current factual situation. Contrary to the majority's conclusion, I would find that the trial court erred by declining to award summary disposition to the City because a question of fact does not exist regarding whether the guy wire constituted a "defect." As argued by the City, the fact that pursuant to MCL 691.1401(e) "[t]he term highway does not include alleys, trees, and utility poles" leads to an implication in favor of the grant of summary disposition. "The goal of statutory interpretation is to discern and give effect to the intent of the Legislature from the statute's plain language." *Houdek v Centerville Twp*, 276 Mich App 568, 581; 741 NW2d 587 (2007). "[I]f the language of the statute is clear and unambiguous, no interpretation is necessary and the court must follow the clear wording of the statute." *American Alternative Ins Co, Inc v York*, 470 Mich 28, 30; 679 NW2d 306 (2004). The relevant statutory language specifically excludes utility poles, and it is disingenuous to suggest that any appendage extending from a utility pole should be treated as a separate or distinguishable entity.

Further, in Black's Law Dictionary (8th ed), the word "defect" is defined as "[a]n imperfection or shortcoming, esp. in a part that is essential to the operation or safety of a product." In applying this definition, our Supreme Court has explicitly restricted sidewalk defects to imperfections occurring in the walkway itself.

In *Buckner Estate*, 480 Mich at 1244, the Court stated: "Because the accumulation, by itself, of ice and snow on a sidewalk, regardless of whether it accumulated through natural causes or otherwise, does not constitute a 'defect' in the sidewalk, plaintiffs have not shown that defendant violated its duty to 'maintain' the sidewalk in 'reasonable repair.' " Further buttressing the restrictive use of the term "defect" is the Court's emphasis on the meaning of the words "repair" and "maintain." Specifically:

> "Maintain" and "repair" are not technical legal terms. In common usage, "maintain" means "to keep in a state of repair, efficiency, or validity: preserve from failure or decline." *Webster's Third New International Dictionary,* Unabridged Edition (1966), p 1362. Similarly, "repair" means "to restore to a good or sound condition after decay or damage; mend." *Random House Webster's College Dictionary* (2000), p 1119. [*Hanson v Mecosta Co Rd Comm'rs,* 465 Mich 492, 502; 638 NW2d 396 (2002).]

This is consistent with our Supreme Court's instruction in *Nawrocki* that statutory exceptions to governmental immunity "are to be *narrowly* construed." *Nawrocki,* 463 Mich at 158. Thus, the majority's effort to expand the term "defect" to encompass the guy wire is contrary to both its plain meaning and prior caselaw.

Interpretation by our Supreme Court of the language comprising MCL 691.1402 precludes an alternative level of analysis. Specifically, MCL 691.1402(1) provides, in relevant part:

> [E]ach governmental agency having jurisdiction over a highway *shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel.* A person who sustains bodily injury or damage to his or her property *by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may*

*recover the damages* suffered by him or her from the governmental agency. [Emphasis added.]

Although the phrase "and in a condition reasonably safe and fit for travel" indicates the potential for the imposition of liability, our Supreme Court has determined that this phrase cannot be read or applied separately from the phrase "maintain the highway in reasonable repair." As discussed in *Nawrocki*:

> The first sentence of the statutory clause, crucial in determining the scope of the highway exception, describes the basic duty imposed on all governmental agencies, including the state, having jurisdiction over any highway: "[to] maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." This sentence establishes the duty to keep the highway in reasonable repair. The phrase "so that it is reasonably safe and convenient for public travel" refers to the duty to maintain and repair. The plain language of this phrase thus states the desired outcome of reasonably repairing and maintaining the highway; it does not establish a second duty to keep the highway "reasonably safe." [*Nawrocki*, 463 Mich at 160 (citation omitted).]

Because plaintiff failed to demonstrate the existence of a "defect," as that term is defined and applied, the trial court erred by determining that a question of fact existed because both the statutory language and caselaw preclude such a determination.

The majority also implies that immunity is not available as a result of the City's decision to construct the sidewalk in the path of the guy wire, resulting in a defective design. However, this Court has recently addressed design defects and the applicability of the highway exception, noting, in relevant part:

> With respect to design defects, the Supreme Court in *Hanson v Mecosta Co Rd Comm'rs* [465 Mich at 502] held that "the highway exception does not include a duty to design,

or to correct defects arising from the original design or construction of highways." The Court explained, "Nowhere in the statutory language is there a duty to *install*, to *construct* or to correct what may be perceived as a dangerous or defective *'design.'* [*Plunkett v Dep't of Transp*, 286 Mich App 168, 183-184; 779 NW2d 263 (2009) (citation omitted).]

Specifically:

> "[T]he focus of the highway exception is on *maintaining* what has already been built in a state of reasonable repair so as to be reasonably safe and fit for public . . . travel." The plain language of the highway exception to governmental immunity provides that the road commission has a duty to repair and maintain, *not a duty to design or redesign. [Id.* at 184 (citation omitted).]

Hence, the majority's implication that construction of the sidewalk in the path of the guy wire comprised a design defect precluding the applicability of governmental immunity is inconsistent with previous rulings of this Court and our Supreme Court.[4] As discussed in *Hanson*:

> What the plaintiff sought in this case was to create a duty to design, or redesign, the roadway to make it safer by eliminating points of special danger or hazard. However, there is no such design duty included in the statute. Nowhere in the statutory language are there phrases such as "known points of hazard" or "points of special danger." We emphasized in *Nawrocki* that the highway exception does not permit claims based on conditions arising from such points of hazard, and that the only permissible claims are those arising from a defect in the actual roadbed itself. [*Hanson*, 465 Mich at 503.]

Therefore, the majority's attempt to broaden the meaning of the statutory language is misplaced, given the Court's indication that a hazard is not the equivalent of a defect.

---

[4] I would further contend that any distinctions between the factual circumstances of this case and *Plunkett* regarding a sidewalk versus a roadbed do not necessitate a different ruling.

With reference to the claims pertaining to Danielson and Warju, MCL 691.1407(2) delineates the circumstances permitting the invocation of governmental immunity by employees and provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

This appeal concerns the applicability of MCL 691.1407(2)(c), regarding plaintiff's assertions that the actions of Danielson and Warju constituted gross negligence and were the proximate cause of the injury, thereby establishing liability.

In determining the applicability of immunity, gross negligence is statutorily defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a); see, also, *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006). "Simply alleging that an actor could have done more is insufficient [to establish gross negligence] under Michigan

law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). Rather, gross negligence implies the existence of "a willful disregard of precautions" to address "safety and a singular disregard of substantial risks." *Id.*

Again, I cannot concur with the majority's reasoning and conclusion on this issue. While a question of fact may exist regarding whether the conduct of these defendants rose to the level of gross negligence, liability is precluded, because it cannot be reasonably concluded that their conduct could be construed as "the proximate cause of the injury or damage." Consistently with the governmental tort liability act, government employees may be held liable for grossly negligent conduct only if the alleged conduct is "the" proximate cause of the injury sustained. MCL 691.1407(2)(c). "[T]he proximate cause" is defined as "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000). Consequently, it is insufficient if defendants' actions comprised simply "a" proximate cause. *Tarlea*, 263 Mich App at 92. Summary disposition may be granted pursuant to MCR 2.116(C)(7) only if reasonable jurors could not find that the governmental employees were "the" proximate cause of the injuries. *Robinson*, 462 Mich at 463 (citation omitted).

Applying *Robinson* to the factual circumstances in this case, the trial court erred by failing to grant summary disposition in favor of Danielson and Warju. It cannot reasonably be disputed that their actions in designing and constructing the sidewalk to cross the guy wire and their failure to ensure movement of the obstruction in a timely manner by DTE arguably

contributed to, and initiated, a chain of events that led to the decedent's injury. Consequently, the conduct attributable to these defendants could easily be construed as having comprised "a" proximate cause of the decedent's injuries. However, their actions were not "the" proximate cause of the decedent's injuries as that phrase has been interpreted in *Robinson*. Despite Danielson's and Warju's initial actions, the decedent did not incur injury until he was traveling at night without lights or a helmet at a potentially unsafe speed while drunk and struck the guy wire, which DTE had failed to relocate, despite the utility's acknowledgement that movement of the guy wire comprised a "rush job." Hence, the decedent's own behavior, combined with that of DTE, comprised a more "direct" and "immediate" cause of the injuries incurred than the actions attributed to Danielson and Warju. Consequently, any negligence on the part of Danielson and Warju was simply too remote to overcome the grant of immunity afforded by MCL 691.1407.