# STATE OF MICHIGAN

# COURT OF APPEALS

PETERSEN FINANCIAL LLC,

Plaintiff-Appellant,

v

CITY OF KENTWOOD and KENT COUNTY TREASURER,

Defendants-Appellees.

FOR PUBLICATION
November 20, 2018
9:10 a.m.

No. 339399
Kent Circuit Court
LC No. 16-011820-CH

Before: MURPHY, P.J., and O'CONNELL and BECKERING, JJ.

MURPHY, P.J.

Plaintiff appeals as of right the circuit court's order granting summary disposition in favor of defendants City of Kentwood (the city) and Kent County Treasurer (the county treasurer) in this action involving claims related to the impact of tax foreclosure proceedings on special assessment agreements entered into by the city, which assessments were payable in installments and had encumbered real property purchased by plaintiff at a tax foreclosure sale. Plaintiff maintained that the judgment of foreclosure extinguished all special assessments connected to the property. The circuit court determined that it lacked subject-matter jurisdiction with respect to four of the five counts in plaintiff's complaint, which sought declaratory relief regarding three of the underlying special assessment agreements, plus an amended version of one of those agreements. The court found that the Michigan Tax Tribunal (MTT) had exclusive jurisdiction over those four counts. The circuit court also summarily dismissed the fifth count of plaintiff's complaint that alleged slander of title predicated on special assessment liens and demands for payment that effectively clouded title. The court concluded that the city and the county treasurer were shielded by governmental immunity on the slander of title claim. We hold that the four counts dismissed for lack of subject-matter jurisdiction were within the jurisdiction of the circuit court, not the MTT, because they did not implicate the MTT's fact-finding purpose and expertise but solely presented questions of law. And, for reasons elaborated on below, we remand for entry of an order providing plaintiff with declaratory relief on two of the counts and

-1-

for further proceedings on the remaining two counts.[1]  We further hold that plaintiff's argument that the circuit court erred in dismissing the slander of title count on the basis of governmental immunity is unavailing.  Accordingly, we affirm in part and reverse and remand in part.

This case concerns real property located within the city.  Starting in 2004, the city and the property owner, along with others, entered into various special assessment agreements relative to several infrastructure improvements that were to benefit the property for purposes of a planned unit development.[2]  These agreements, which were recorded and involved the property owner making installment payments to the city, indicated that the contractual obligations contained therein constituted covenants that ran with the land and bound all successors in title.  The city commission adopted multiple resolutions associated with the agreements and prepared and confirmed special assessment rolls for the improvements.  Eventually, the property owner failed to pay the special assessments, a tax foreclosure action was commenced, a judgment of foreclosure was entered, the property owner failed to redeem the property or appeal the judgment, and title vested absolutely in the county treasurer, as the foreclosing governmental unit.  Subsequently, at a tax foreclosure sale, the county treasurer conveyed the property to plaintiff pursuant to a quitclaim deed.

Over one year later, plaintiff filed its complaint against defendants, alleging that under the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, its "purchase was free and clear from all liens except any future installments of special assessments."  Plaintiff asserted that despite the fact that title by fee simple absolute was conveyed to plaintiff in the tax foreclosure sale, the city continued to cloud the property's title "by improperly attempting to revive past installments for special assessments as well as contractual obligations that were extinguished upon the final Judgment of Foreclosure."  Plaintiff complained that defendants "wrongfully attempted to recoup past due special assessment installments and continue[d] to charge Plaintiff for the same."  Plaintiff insisted that under the GPTA, all previously owed special assessment installments were extinguished by the judgment of foreclosure and that the county treasurer lacked the authority to deviate from the GPTA mandates.

As indicated earlier, the first four counts of plaintiff's complaint each sought declaratory relief with respect to a particular special assessment agreement.  Count I pertained to a deferred assessment agreement, which, according to plaintiff, was scheduled to be paid off in full eight years prior to the tax foreclosure; therefore, any debt owed for unpaid installments was extinguished by the judgment of foreclosure.  Count II concerned a voluntary special assessment/development agreement (VSADA), which plaintiff alleged was to be paid off within 10 years under the language of the special assessment roll, and which date had elapsed prior to the entry of the judgment of foreclosure.  Therefore, any accrued debt for nonpayment was

---

[1] The latter two counts ultimately concern the single question regarding the enforceability of the special assessment arising out of the amended version of one of the special assessment agreements.

[2] The property consisted of 300 acres, only a portion of which was ultimately purchased by plaintiff at the tax foreclosure sale.

extinguished by the foreclosure judgment. Count III regarded a landscape/irrigation agreement, and plaintiff alleged that the termination date was eight years from the confirmation of the special assessment roll and that the last scheduled date for an installment payment date had passed before the tax foreclosure proceedings. Thus, according to plaintiff, the debt owed on the unpaid balance was extinguished by the judgment of foreclosure. Count IV pertained to an amended VSADA,[3] presenting a somewhat different issue than that posed in the first three counts. The amended VSADA was not executed by the prior property owner, but was an agreement between the city and the county treasurer that was signed after title had vested with the county treasurer but before plaintiff acquired its interest. In Count IV, plaintiff alleged that "[t]here was no authority for the Defendants to enter into the [amended] . . . VSADA in an attempt to restore an assessment that had been voided by the GPTA." Plaintiff claimed that this agreement was not supported by any consideration and that it was against public policy. Finally, in regard to Count V, plaintiff alleged a cause of action for slander of title, seeking money damages. Plaintiff contended that defendants had maliciously and falsely continued to "assert that substantial special assessments exist on the Subject Property." Plaintiff maintained that defendants' "assertions have been published, as the installments claimed owing on the special assessments appear in title work, the public tax records, and in instruments recorded with the Kent County Register of Deeds." Plaintiff alleged that defendants' misrepresentations had rendered the property "unmarketable for its true value."

On competing motions for summary disposition, the circuit court, with respect to Counts I through IV, agreed with defendants' position that plaintiff was challenging the nature and imposition of the special assessments and, therefore, the MTT had exclusive jurisdiction over those counts. We note that the city, as confirmed in defendants' appellate brief, "was not seeking to collect the Deferred Assessment or the Landscape Irrigation Agreement[4] with respect to the Subject Property." The circuit court rejected all of plaintiff's arguments regarding subject-matter jurisdiction. The circuit court also proceeded to rule:

> Even if the court were persuaded that Plaintiff's claims fall within the GPTA, Plaintiff's position is fatally flawed. A foreclosure under the GPTA specifically states that it extinguishes all liens against the property, including any lien for unpaid taxes or special assessments, except future installments of special assessments. MCL 211.78k(5)(c).[5] The Defendants have stated, both on the

---

[3] This was an amendment and extension of the agreement covered by Count II of plaintiff's complaint.

[4] These are the agreements referenced, respectively, in Counts I and III of plaintiff's complaint.

[5] We note that MCL 211.78k(5)(c) provides that a circuit court's final judgment of foreclosure shall specify, in part, as follows:

> That all liens against the property, including any lien for unpaid taxes or special assessments, except future installments of special assessments and liens recorded by this state or the foreclosing governmental unit pursuant to the natural resources and environmental protection act, 1994 PA 451, MCL 324.101 to 324.90106, are extinguished, if all forfeited delinquent taxes, interest, penalties,

-3-

record and in brief form, that they are only pursuing collection of the Voluntary Special Assessment/Development Agreement installments referenced in Plaintiff's Count II. This assessment was amended after the foreclosure [see Count IV of plaintiff's complaint]. Moreover, it addresses future installments that will be collected until 2024. Therefore, the foreclosure sale does not operate to extinguish the installments.

The court is also not persuaded by Plaintiff's claims that the assessment is actually a contract. As more full[y] discussed in subsection "a" of this opinion, the issue of whether the assessment is actually a contract is for the MTT to determine. However, the court notes that Plaintiff is not a party to the assessment/contract and likely lacks standing to challenge it. Additionally, the forming document states "the parties agree that, **to the extent not otherwise prohibited by law**, the jurisdiction and venue for any such dispute shall be solely with the state courts located in Kent County, Michigan." . . . As discussed above, the MTT has exclusive jurisdiction over this matter. A contract cannot establish or alter jurisdiction.

In regard to Count V, slander of title, the circuit court ruled that the claim constitutes a tort that is covered by governmental immunity and that none of the statutory exceptions to immunity applied. Accordingly, the circuit court denied plaintiff's motion for summary disposition and granted defendants' summary disposition motion under MCR 2.116(C)(4) and (7).

We review de novo a circuit court's ruling on a motion for summary disposition. *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017). "We likewise review de novo questions of subject matter jurisdiction[.]" *Id.* "Further, the determination regarding the applicability of governmental immunity and a statutory exception to governmental immunity is a question of law that is also subject to review de novo." *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). Under MCR 2.116(C)(4), summary disposition is warranted when "[t]he court lacks jurisdiction of the subject matter." See also *Winkler*, 500 Mich at 333. Under MCR 2.116(C)(7), summary disposition is appropriate when a claim is barred based on "immunity granted by law." See also *Snead*, 294 Mich App at 354.

Subject-matter jurisdiction concerns the right of an adjudicative body to exercise judicial power over a class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending. *Winkler*, 500 Mich at 333. The question of jurisdiction is not dependent on the truth or falsity of the allegations, but upon their nature. *Wayne Co v AFSCME Local 3317*, __ Mich App __, __; __ NW2d __ (2018); slip op at 11. The

---

and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

inquiry into subject-matter jurisdiction is determinable at the commencement of a case, not its conclusion. *Id.* There is a vast difference between want of jurisdiction, in which case a court has no power whatsoever to adjudicate the matter, and an error in the exercise of undoubted jurisdiction, in which case the court's action is not void, even though it may be subject to direct attack on appeal. *Id.*

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605; see also Const 1963, art 6, § 13 ("The circuit court shall have original jurisdiction in all matters not prohibited by law[.]").[6] With respect to the MTT, it has "exclusive and original jurisdiction" over "[a] proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, *special assessments*, allocation, or equalization, under the property tax laws of this state." MCL 205.731(a) (emphasis added). In *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 53; 832 NW2d 728 (2013), our Supreme Court extrapolated four elements from MCL 205.731(a), observing:

> Thus, for the tribunal to have jurisdiction pursuant to MCL 205.731(a), four elements must be present: (1) a proceeding for direct review of a final decision, finding, ruling, determination, or order; (2) of an agency; (3) relating to an assessment, valuation, rate, special assessment, allocation, or equalization; (4) under the property tax laws. Where all such elements are present, the tribunal's jurisdiction is both original and exclusive.

"The divestiture of jurisdiction from the circuit court is an extreme undertaking[;]" however, "the Tax Tribunal Act[, MCL 205.701 *et seq.*,] clearly evidences a legislative intention

---

[6] MCL 600.601(1) provides:

> The circuit court has the power and jurisdiction that is any of the following:
>
> (a) Possessed by courts of record at the common law, as altered by the state constitution of 1963, the laws of this state, and the rules of the supreme court.
>
> (b) Possessed by courts and judges in chancery in England on March 1, 1847, as altered by the state constitution of 1963, the laws of this state, and the rules of the supreme court.
>
> (c) Prescribed by the rules of the supreme court.

that the circuit court not have jurisdiction over matters within the tribunal's exclusive jurisdiction." *Wikman v City of Novi*, 413 Mich 617, 645; 322 NW2d 103 (1982).

MCL 205.731(a) expressly references "special assessments," and a special assessment "is a specific levy designed to recover the costs of improvements that confer local and peculiar benefits upon property within a defined area." *Kadzban v City of Grandville*, 442 Mich 495, 500; 502 NW2d 299 (1993). "In contrast to a tax, a special assessment is imposed to defray the costs of specific local improvements, rather than to raise revenue for general governmental purposes." *Id.* The Tax Tribunal Act grants the MTT "exclusive jurisdiction over . . . [a] proceeding seeking direct review of the governmental unit's decision concerning a special assessment for a public improvement." *Wikman*, 413 Mich at 626.

We conclude that the particular allegations in Counts I through III of plaintiff's complaint squarely presented a legal question regarding the effect of a tax foreclosure judgment on overdue special-assessment installment payments; it is a pure issue of statutory construction. In *Romulus City Treasurer v Wayne Co Drain Comm'r*, 413 Mich 728, 737-738; 322 NW2d 152 (1982), the Supreme Court described the composition of the MTT and the relevance of that composition, explaining:

> The tribunal that was created to exercise such jurisdiction was labeled a "quasi-judicial agency," whose membership is to be comprised of persons with various specified qualifications. Of the seven members, two must be attorneys with experience either in property tax matters or in judicial or quasi-judicial office. One member must be a certified assessor; one, an experienced professional real estate appraiser; and one, a certified public accountant with experience in state-local tax matters. . . . [P]ersons who are not members of any of the enumerated disciplines are required to have experience in state or local tax matters.
>
> The expertise of the tribunal members can be seen to relate primarily to questions concerning *the factual underpinnings of taxes*. In cases not involving special assessments, the tribunal's membership is well-qualified to resolve the disputes concerning those matters that the Legislature has placed within its jurisdiction: assessments, valuations, rates, allocation and equalization. In special assessment cases, the tribunal is competent to ascertain whether the assessments are levied according to the benefits received. Although the tribunal, in making its determinations, will make conclusions of law, the matters within its jurisdiction under MCL 205.731 most clearly relate to the basis for a tax . . . . [Citations omitted; emphasis added.]

In *Joy Mgt Co v Detroit*, 176 Mich App 722, 728; 440 NW2d 654 (1989), overruled in part on other grounds by *Detroit v Walker*, 445 Mich 682, 697 n 20 (1994), this Court noted that the MTT's "primary functions are to find facts," where its expertise chiefly relates "to questions concerning the factual underpinnings of taxes." The *Joy Mgt Co* panel ruled:

> In the instant case, plaintiff has not challenged a final decision regarding valuation, rates, allocation or assessment, nor is plaintiff asking for a refund or a redetermination of a tax. Rather, plaintiff has challenged the legality of

-6-

the *method* used by defendant to enforce collection of the property taxes. Resolution of this issue depends not on findings of fact, but on conclusions of law based upon the construction of [MCL 211.47]. This is clearly within the scope of the circuit court's jurisdiction. Thus, the trial court did not err by denying defendant's motion for summary disposition pursuant to MCR 2.116(C)(4), lack of subject-matter jurisdiction. [*Joy Mgt Co*, 176 Mich App at 728-729.]

In *In re Petition of the Wayne Co Treasurer for Foreclosure*, 286 Mich App 108, 112-113; 777 NW2d 507 (2009), this Court indicated that when a "challenge does not require any findings of fact, but rather only construction of law—where no factual issues requiring the tribunal's expertise are present—the circuit court has jurisdiction to consider the issue." The Court observed that this "reasoning applies to any challenge to a tax assessment based not on the validity of the assessment per se, but on peripheral issues relevant to enforcing a tax assessment." *Id.* at 113.

Here, our review of Counts I through III of plaintiff's complaint reveals that plaintiff is not challenging the factual basis or the amount of the underlying assessments arising from the special assessment agreements; rather, plaintiff takes issue with the continuing enforceability of the assessments, at least in regard to outstanding past due installments, in light of the tax foreclosure, arguing that past debt was extinguished by the judgment of foreclosure. It is important to keep in mind that, even though plaintiff's arguments at the summary disposition stage may have deviated somewhat from the allegations in its complaint, it is the nature of those allegations alone that govern our resolution of whether the circuit court has subject-matter jurisdiction. *Grubb Creek Action Comm v Shiawassee Co Drain Comm'r*, 218 Mich App 665, 668; 554 NW2d 612 (1996) ("A court's subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint."); see also *Reynolds v Robert Hasbany, MD PLLC*, 323 Mich App 426, 431; 917 NW2d 715 (2018); *Trost v Buckstop Lure Co, Inc*, 249 Mich App 580, 586; 644 NW2d 54 (2002); *Luscombe v Shedd's Food Prod Corp*, 212 Mich App 537, 541; 539 NW2d 210 (1995). Resolution of Counts I through III requires construction of the GPTA and the law of tax foreclosure, having nothing to do with the factual underpinnings of the special assessments. The proceedings, as framed by plaintiff's complaint, did not entail plaintiff seeking direct review of a final decision, finding, ruling, or determination by the city relating to special assessments under the property tax laws of this state. MCL 205.731(a). Instead, plaintiff sought review of various GPTA foreclosure provisions and application of those provisions *to the existing factual circumstances*, which is not within the wheelhouse of MTT's expertise. In Counts I through III, there is no allegation challenging the amount or the basis of a contractually-created special assessment, nor is there an allegation that an improvement did not benefit the property in correlation to the cost of the improvement. Counts I through III of plaintiff's complaint did not trigger the MTT's original and exclusive jurisdiction.

With respect to the deferred assessment agreement addressed in Count I and the landscape/irrigation agreement challenged in Count III, defendants, as recognized by the circuit court, maintained that the city does not seek to recover or hold plaintiff responsible for any amounts owing under those agreements/assessments. In light of this position, and given our ruling on subject-matter jurisdiction, we deem the appropriate course of action to be a remand to the circuit court for entry of declaratory relief in favor of plaintiff on those two counts, making

clear that plaintiff owes nothing in regard to those agreements/assessments, nor is plaintiff's property to be subject to any lien or encumbrance connected to the two agreements/assessments.

With respect to Count II and the VSADA and the amendment of the VSADA post-foreclosure judgment but pre-foreclosure sale, which amended agreement is addressed in Count IV of plaintiff's complaint, it is necessary to examine the record in more detail. The VSADA was entered into in 2004, and it provided that "[t]he term of the special assessment will not exceed ten (10) years." The VSADA further stated that it "shall be effective as of the date first written above and shall remain in effect until all the obligations of the Owner under this Agreement have been met." Additionally, the VSADA provided that "the final amount of any special assessment, the term of years for the special assessment and similar matters associated with the establishment of a special assessment district for the Owner-Contracted Infrastructure Improvements will be determined by resolution of the City Commission *in its discretion*." (Emphasis added.)

A resolution adopted by the city on July 15, 2014, indicated that a balloon payment totaling $403,620 was due on September 7, 2014, under the VSADA. The resolution, referring back to the city's right to exercise its discretion as stated in the VSADA, further provided:

> Without re-confirming the District's special assessment roll, the City Commission has determined that extending the term of the special assessment for one additional year [September 7, 2015] is in the public interest in order to allow the owner of the Property an opportunity to cause the balloon payment to be made and to bring the taxes and special assessment on the Property current, to make the Property more marketable, and to enhance economic development opportunities within the City.

On March 6, 2015, before the expiration of the one-year extension adopted by the city, the judgment of foreclosure was entered, vesting title in the county treasurer. The judgment became final and unappealable on April 1, 2015. In June 2015, the city and the county treasurer entered into the amended VSADA. The amended VSADA recited the history of the original VSADA, noted the foreclosure proceedings, referenced the language, quoted above, found in the city's resolution adopted in July 2014, acknowledged the balance of $403,620, and set forth a payment structure requiring nine annual payments of $54,000 starting on September 7, 2015, with a final payment of $48,307 due on September 7, 2024. The amended VSADA also provided:

> The parties acknowledge and agree that the City, consistent with the terms of the [VSADA] and City Ordinance No. 4-67, as amended, has reserved to itself the right to extend the term of years for payment of the above-described special assessment without changing the date of the confirmation of the Roll or exposing the City to a challenge of the special assessment or Roll, as amended, and that it is the parties' intent that all challenges, claims or causes of action to any special assessment associated with the Property or the Roll are released and waived by the [county treasurer], its successors and assigns as against the City.

The amended VSADA was recorded with the register of deeds on June 23, 2015. In November 2015, plaintiff purchased the property at the tax foreclosure sale for $36,500.

-8-

We have already determined that the circuit court has subject-matter jurisdiction over Count II of the complaint concerning the VSADA, standing on its own. And we now hold that the circuit court also has subject-matter jurisdiction over Count IV of the complaint pertaining to the amended VSADA. With respect to Count IV, as stated earlier, plaintiff alleged that "[t]here was no authority for the [d]efendants to enter into the [amended] . . . VSADA in an attempt to restore an assessment that had been voided by the GPTA." Plaintiff asserted that the amended VSADA was not supported by any consideration and that it was against public policy. Regardless of the substantive soundness of plaintiff's argument, Count IV effectively alleged the creation or existence of a legally invalid contract that gave rise to a special assessment or the extension of a special assessment, resulting in an encumbrance on plaintiff's property.

The MTT does not have subject-matter jurisdiction over contract disputes simply because the substance of the contract regards special assessments. In *Highland-Howell Dev Co, LLC v Marion Twp*, 469 Mich 673, 677-678; 677 NW2d 810 (2004), our Supreme Court, after citing and quoting the language from *Romulus City Treasurer* that we alluded to earlier, ruled:

> While the Tax Tribunal's membership is particularly competent to resolve disputes related to the basis for and amounts of taxes, its membership is not qualified to resolve common-law tort or contract claims. Clearly, this supports our conclusion that the Legislature did not intend the Tax Tribunal's exclusive jurisdiction to encompass matters outside the realm of those tax matters specified in the statute.

As alleged by plaintiff, Count IV presented a question of contract law, as shaped by the construction of provisions in the GPTA. Count IV does not require any findings of fact nor entail the factual underpinnings of taxes; rather, it concerns the construction of law—contract law and the GPTA. Therefore, the circuit court and not the MTT has jurisdiction over Count IV.

That concluded, we must nonetheless continue our analysis, because the circuit court supplemented its jurisdictional ruling with a determination that plaintiff's action was fatally flawed even if the court had subject-matter jurisdiction. The circuit court first found that the judgment of foreclosure was entered *before* the amended VSADA was executed. And therefore, pursuant to MCL 211.78k(5)(c), future installments of a special assessment are at issue, which necessarily could not have been extinguished by the foreclosure judgment. The court's ruling assumes the soundness and validity of the amended VSADA from which the special assessment arose. However, the allegations in Count IV of the complaint challenge the legal validity of the amended VSADA. If the amended VSADA and resulting assessment are void or voidable, the language in MCL 211.78k(5)(c) excepting future assessment installments from extinguishment becomes irrelevant, because there is no assessment to enforce.

The circuit court next observed that plaintiff was not a party to the amended VSADA and thus "likely lacks standing to challenge it." We do not find this language to reflect a conclusive ruling on standing, and any standing issue can certainly be entertained more fully and conclusively on remand. We do note that the special assessment based on the amended VSADA encumbers plaintiff's property to the tune of over half a million dollars. The circuit court did not address the allegations in Count IV of plaintiff's complaint that the amended VSADA was

invalid because there was a lack of consideration and because it violated public policy. The legal validity of the amended VSADA must be addressed and resolved on remand.

Finally, with respect to Count V, the circuit court summarily dismissed the claim based on governmental immunity. In *Moraccini v City of Sterling Hts*, 296 Mich App 387, 391-392; 822 NW2d 799 (2012), this Court set forth the basic analytical framework concerning governmental immunity:

> Except as otherwise provided, the governmental tort liability act (GTLA), MCL 691.1401 *et seq*., broadly shields and grants to governmental agencies immunity from tort liability when an agency is engaged in the exercise or discharge of a governmental function. MCL 691.1407(1); *Duffy v Dep't of Natural Resources*, 490 Mich 198, 204; 805 NW2d 399 (2011); *Grimes v Dep't of Transp*, 475 Mich 72, 76-77; 715 NW2d 275 (2006). "The existence and scope of governmental immunity was solely a creation of the courts until the Legislature enacted the GTLA in 1964, which codified several exceptions to governmental immunity that permit a plaintiff to pursue a claim against a governmental agency." *Duffy*, 490 Mich at 204. A governmental agency can be held liable under the GTLA only if a case falls into one of the enumerated statutory exceptions. *Grimes*, 475 Mich at 77; *Stanton v Battle Creek*, 466 Mich 611, 614-615; 647 NW2d 508 (2002). . . . This Court gives the term "governmental function" a broad interpretation, but the statutory exceptions must be narrowly construed. [Citation omitted.]

"[T]he burden . . . fall[s] on the governmental employee to raise and prove his entitlement to immunity as an affirmative defense." *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008). But "[a] plaintiff filing suit against a governmental agency must initially plead his claims in avoidance of governmental immunity." *Id.* at 478-479.

The sole argument posed by plaintiff on appeal is that defendants were not engaged in the exercise or discharge of a governmental function when attempting to collect an extinguished obligation. This argument lacks merit, failing to appreciate the difference between having the authority to generally engage in a particular governmental function and the negligent, improper, or wrongful performance of the authorized function. A "governmental function" is defined as "an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(b).

A "city may in its charter provide . . . [f]or assessing and reassessing the costs, or a portion of the costs, of a public improvement to a special district." MCL 117.4d(1)(a). The Kentwood Code of Ordinances (KCO) grants the city authorization to impose special assessments. See KCO, § 10.1; KCO, § 50-2 ("The whole cost, or any part thereof, of any local public improvement may be defrayed by special assessment upon the lands especially benefitted by the improvement in the manner provided in this chapter."). Furthermore, KCO, § 50-13 authorizes the creation of liens relative to special assessments, providing that "[s]pecial assessments . . . shall become a personal obligation to the city . . . and, until paid, shall be and remain a lien upon the property assessed . . . ." Indeed, MCL 211.78k(5)(c) (see footnote 5 of this opinion), which plaintiff cites in its complaint as supporting extinguishment of existing

special assessments, recognizes the authority of governmental entities to record liens against property for special assessments.

In light of the authorities, the city was plainly engaged in the exercise and discharge of a governmental function for purposes of MCL 691.1407(1) and governmental immunity with respect to the special assessments at issue, their collection, and the resulting recorded liens. Plaintiff's argument simply challenges the specific manner in which the city carried out the governmental functions, alleging that the city clouded plaintiff's title by improperly attempting to collect payment on special assessments, making payment demands, and allowing recorded instruments to remain in place, where the special assessments had been extinguished. In determining whether a governmental agency was engaged in the exercise of a governmental function, the focus must be on the general activity, not the particular conduct involved at the time the alleged tort was committed. *Tate v Grand Rapids*, 256 Mich App 656, 661; 671 NW2d 84 (2003). The improper performance of an activity authorized by law is, regardless of the impropriety, still authorized for purposes of the governmental function test. *Richardson v Jackson Co*, 432 Mich 377, 385; 443 NW2d 105 (1989). A governmental agency is not engaged in the exercise or discharge of a governmental function when it lacks the legal authority to perform the activity "in any manner." *Id.* at 387. Such is not the situation in the instant case. Plaintiff has not established that the circuit court erred in summarily dismissing plaintiff's claim for slander of title.

Affirmed in part, and reversed and remanded in part for further proceedings. We do not retain jurisdiction. No party having fully prevailed on appeal, we decline to award taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Jane M. Beckering

-11-