*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH MANN,

       Plaintiff-Appellee,

v

CITY OF DETROIT,

       Defendant-Appellant.

UNPUBLISHED
November 2, 2023

No. 361637
Wayne Circuit Court
LC No. 21-003705-NO

Before: SHAPIRO, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

In this suit to recover damages for injuries caused by an allegedly defective sidewalk, defendant, the City of Detroit (the City), appeals as of right the trial court order denying its motion for summary disposition under MCR 2.116(C)(7) of plaintiff Kenneth Mann's claim for damages under the sidewalk exception to the governmental tort liability act (GTLA), MCL 691.1401, *et. seq*. Because the trial court erred by determining that the City was not entitled to summary disposition, we reverse and remand for entry of an order granting summary disposition to the City.

## I. BASIC FACTS

Mann was walking on a sidewalk near the intersection of Greenfield Road and Puritan Avenue in Detroit, Michigan, when he tripped over what he described as a "pole that was sticking out of the sidewalk." Mann fell and was injured as a result of his fall. The metal pole, also referred to in this opinion as a metal stub, is the remains of a signpost that was partially removed, and it is embedded in the middle of the sidewalk. The pole is over 5 inches higher than surface of the sidewalk.

In March 2021, Mann filed a complaint against the City of Detroit, alleging that it breached its statutory duty under MCL 691.1402a(1). In response, the City filed a motion for summary disposition under MCR 2.116(C)(7), arguing that (1) the danger posed by the signpost stub was

open and obvious and (2) the defect was not part of the sidewalk.[1]  Following argument on the motion, the trial court determined that the "protrusion from the walkway sidewalk is an imperfection in the walkway itself," that "a sidewalk defect of a vertical discontinuity of two inches or more as stated in the statute, is always open and obvious, thus, [the defense of open and obvious] is a violation of public policy," and that there was a question of fact as to whether the danger was open and obvious or had special aspects.

## II.  SUMMARY DISPOSITION

### A.  STANDARD OF REVIEW

The City argues that the trial court erred by denying its motion for summary disposition. The court's denial of a motion for summary disposition is reviewed de novo.  *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).  We also review de novo questions of government immunity.  *Petersen Fin LLC v Kentwood*, 326 Mich App 433, 441; 928 NW2d 245 (2018).  This Court also reviews de novo the proper interpretation of statutes. *State Farm Fire & Cas Co v Corby Energy Servs*, Inc, 271 Mich App 480, 483; 722 NW2d 906 (2006).  Summary disposition under MCR 2.116(C)(7) is appropriate when immunity is granted by law.  When reviewing a (C)(7) motion, this Court considers the documentary evidence submitted by the parties.  *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 329; 964 NW2d 839 (2020).  The contents of the complaint are accepted as true unless contradicted by documentation submitted by the nonmoving party.  *Id*. at 330.  "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, whether summary disposition is proper is a question of law for the Court."  *Id*.

### B.  ANALYSIS

"Under the GTLA, governmental agencies and their employees are generally immune from tort liability when they are engaged in the exercise or discharge of a governmental function."  *Roy v Swager*, 501 Mich 52, 62; 903 NW2d 366 (2017); MCL 691.1407(1).  The immunity conferred by the GTLA is broad, and, although there are several exceptions, the exceptions are "narrowly construed."  *Plunkett v Dept' of Transp*, 286 Mich App 168, 181; 779 NW2d 263 (2009).  At issue in this case is the "highway exception" under MCL 691.1402, which provides that a plaintiff may recover damages "resulting from a municipalities failure to keep highways—including sidewalks—in reasonable repair and in a condition reasonably safe and fit for travel . . . ." *Bernardoni v City of Saginaw*, 499 Mich 470, 473; 886 NW2d 109 (2016) (quotation marks and citation omitted).  More specifically, a municipality "in which a sidewalk is installed adjacent to a municipal, county, or state highway" has a duty to maintain such a sidewalk "in reasonable repair." MCL 691.1402a(1).  For a plaintiff to successfully argue a claim of this nature, he or she must show that at least 30 days before the occurrence of the injury, the municipality knew, or should have known, of the existence of the defect in the sidewalk.  MCL 691.1402a(2).  Moreover, the

---

[1] The City also argued lack of notice; however, it withdrew that part of its argument from consideration during oral argument on its motion.  Therefore, we will not address that argument in this opinion.

plaintiff must rebut the statutory presumption that the municipality maintained the sidewalk in reasonable repair. MCL 691.1402a(3). The presumption may be rebutted if the plaintiff shows that a proximate cause of the injury was one or both of the following:

>　　　　(a) A vertical discontinuity defect of 2 inches or more in the sidewalk.

>　　　　(b) A dangerous condition in the sidewalk itself of a particular character other than solely a vertical discontinuity. [MCL 691.1402a(3).]

Finally, our Legislature has provided that municipalities may assert "any defense available under the common law with respect to a premises liability claim, including, but not limited to, a defense that the condition was open and obvious." MCL 691.1402a(5).

## 1. OPEN AND OBVIOUS

We first address the City's argument that it is not liable for Mann's injuries because the metal stub that he tripped over was open and obvious. The trial court found that applying the open and obvious defense to a claim brought under MCL 691.1402a violated public policy. As indicated above, however, our Legislature has expressly stated that the common-law defense of open and obvious is expressly available to municipalities. MCL 691.1402a(5). "[W]here the language of the statute is clear, it is not the role of the judiciary to second-guess a legislative policy choice; a court's constitutional obligation is to interpret, not rewrite, the law." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 650; 662 NW2d 424 (2003). Thus, whether a statute is "fair" or "unfair" is not a proper consideration for this Court. *Id*. Instead, "it is for the Legislature, not this Court, to address the policymaking considerations that are inherent in statutory lawmaking." *Brickey v McCarver*, 323 Mich App 639, 647; 919 NW2d 412 (2018).

The court also found that there was a question of fact as to whether the danger was open and obvious. "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012). The test requires an inquiry of "the objective nature of the condition of the premises at issue." *Id*. (quotation marks and citation omitted). Until recently, our Supreme Court held that whether a danger is open and obvious must be analyzed under the element of duty, and that, in cases where the danger was open and obvious, a premises possessor would only be liable if the plaintiff provided "evidence of special aspects of the condition." *Lugo v Ameritch Corp, Inc*, 464 Mich 512, 514, 516-517; 629 NW2d 384 (2001). However, our Supreme Court overruled that precedent in *Kandil-Elsayed v F & E Oil, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket Nos 162907 & 163430); slip op at 2. In *Kandil-Elsayed*, the Court explained that, under the common law, "the open and obvious nature of a condition is relevant to breach and the parties' comparative fault." *Id*. Moreover, the Court expressly overruled the special-aspects doctrine, explaining that "when a land possessor should anticipate the harm that results from an open and obvious condition, despite its obviousness, the possessor is not relieved of the duty of reasonable care." *Id*. The *Kandil-Elsayed* summarized the current state of the law as follows:

a land possessor owes a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land. If the plaintiff establishes that the land possessor owed plaintiff a duty, the next step in the inquiry is whether there was a breach of that duty. Our decision does not alter the standard of reasonable care owed to an invitee, . . . Rather, as has always been true, a land possessor need only exercise reasonable care under the circumstances. As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee. If breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly. A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it. [*Id*. at ___; slip op at 43-44.]

Under the *Kandil-Elsayed* framework, questions of material fact remain as to whether the City breached its duty and whether Mann was comparatively at fault. The dangerous condition was a metal stub that was over 5 inches high. It was in the middle of the sidewalk near a bus stop. The height and placement of the metal stub are relevant to whether the condition was open and obvious, i.e., whether "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." See *Hoffner*, 492 Mich at 461. There is some evidence to suggest that the City did not exercise reasonable care under the circumstances; specifically, the defect has existed for at least 13 years. Yet, there is also some evidence to suggest that, even if the City breached its duty, a jury may find that Mann was comparatively negligent because he tripped over the metal stub without seeing it because he was looking backward while he was walking. Because factual questions remain, notwithstanding that the court applied the now-overruled framework set forth by *Lugo* and its progeny, we conclude that the trial court did not err by denying summary disposition on the question of whether the hazardous condition was open and obvious.

## 2. NATURE OF DEFECT

Next, we consider the City's argument that the highway exception does not apply because the metal stub is not part of the sidewalk. Under MCL 691.1402a(1), the City has a duty to "maintain the *sidewalk* in reasonable repair." (Emphasis added). It is not liable for a breach of that duty unless Mann proves that at least 30 days before his injury, the City "knew or, in the exercise of reasonable diligence, should have known of the existence of the defect *in the sidewalk*." MCL 691.1402a(2). The term "sidewalk" is defined as "a paved public sidewalk intended for pedestrian use situated outside of and adjacent to the improved portion of a highway designed for vehicular travel." MCL 691.1401(f).[2]

---

[2] The dissent claims that the question to be answered is "whether an object *embedded in* the concrete sidewalk and creating a five-inch vertical discontinuity in the middle of the sidewalk is 'in the sidewalk.'" Respectfully, we disagree. The question is whether *the sidewalk* is defective,

-4-

Mann argues that the signpost is part of the sidewalk because it is embedded in the sidewalk. He points to no language in the GTLA to support that position. Further, he does not point to any caselaw supporting his interpretation. In contrast, the City identifies two cases which it contends support its position that the sign post is not part of the sidewalk. We address each case in turn.

First, in *LaMeau v Royal Oak*, 289 Mich App 153, 169; 796 NW2d 106 (2010), overruled by 490 Mich 949 (2011), the Court considered whether the City of Royal Oak was liable for injuries caused by a "guy wire" that was anchored in the sidewalk at one end. The majority concluded, in relevant part, that the embedded anchor and guy wire "were part of the sidewalk" because they did not involve external conditions, such as ice, snow, or oil, and because the anchor and guy wire were not fixtures attached to the sidewalk after its construction. *Id*. at 170-171. The Court concluded that liability for defects in the sidewalk existed "even if the defect in the sidewalk is occasioned by the presence of a structure that the municipality would normally not have a duty to maintain in reasonable repair." *Id*. at 171. The Supreme Court, however, overruled the majority, and adopted the dissenting opinion. *LaMeau v Royal Oak*, 490 Mich 949 (2011). Unlike the majority, the dissent expressly found that the pole and the guy wire extending from it were not "part of the sidewalk." *LaMeau*, 289 Mich App at 187 (TALBOT, J., dissenting). Moreover, the dissent noted that "sidewalk defects [were limited] to imperfections occurring in the walkway itself." *Id*. at 188, citing *Buckner Estate*, 480 Mich 1243, 1244; 747 NW2d 231 (2008). Although Mann argues on appeal that this case is distinguishable from *LaMeau* because the defect is "embedded in the middle concrete," the *LaMeau* dissent adopted by the Supreme Court found no liability despite the fact that the anchor for the guy wire was embedded in the sidewalk. Mann offers no rationale for why an external object embedded in concrete results in liability when it is in the center of the sidewalk as opposed to the sidewalk's edge, and we can discern no meaningful distinction between the defect in this case and the defect in *LaMeau*.

We recognize that Mann tripped over the protruding portion of the defect, whereas the plaintiff in *LaMeau* was killed when he came into contact with the guy wire extending over the sidewalk. The *LaMeau* plaintiff, however, would not have been injured but for the fact that the guy wire was anchored in the sidewalk on one side and on a utility pole on the other side. See *LaMeau*, 289 Mich App at 169. Thus, like the sign post in this case, the guy wire was, in fact,

---

which requires an analysis of whether the sign post is considered to be part of the sidewalk. As noted above, "sidewalk" is statutorily defined as "a paved public sidewalk intended for pedestrian use situated outside of and adjacent to the improved portion of a highway designed for vehicular travel." MCL 691.1401(f). The definition, notably, does not indicate that a sidewalk consists of both the paved portion of the sidewalk and any object embedded in that paved portion. In prior cases, this Court has determined that objects—such as the accumulation of ice and snow—*on* the sidewalk are not part of the sidewalk. See *LaMeau*, 289 Mich App at 170-171. Likewise, we conclude that the statutory definition does not include distinct objects—such as sign posts— embedded in the sidewalk.

attached to the sidewalk, and it would be disingenuous to argue that the *LaMeau* plaintiff was killed by a defect that was not, in any way, connected to the sidewalk.[3]

Next, in *Weaver v City of Detroit*, 252 Mich App 239, 246; 651 NW2d 482 (2002), the Court concluded that a streetlight pole was not part of a "highway."[4] In that case, the Court held that "the plain language of the statute does not support the conclusion that streetlight poles are included within the definition of the term 'highway.' " *Id*. *Weaver*, therefore, stands for the proposition that in order for a defect to be considered part of the sidewalk, it must first satisfy the statutory definition of sidewalk. In this case, Mann suggests that the sign post is part of the sidewalk because it is embedded in the middle of the sidewalk. However, "the immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000). As noted above, the relevant statutory definition of sidewalk refers, generally, to "a paved public sidewalk intended for pedestrian use . . ." MCL 691.1401(f). A sign post, regardless of whether it is maintained in pristine condition or—as in this case—is cut down so that only a metal stub remains—is not a paved public sidewalk intended for pedestrian use.

Finally, we find persuasive the decision in *Ali v City of Detroit*, 218 Mich App 581; 554 NW2d 384 (1996). In *Ali*, a bus passenger shelter collapsed on the plaintiff. *Id*. at 584. One of the issues involved in the appeal was whether plaintiff's claim fell within the highway exception to governmental immunity. MCL 691.1402(1). This Court held that the highway exception did not "include fixtures attached to the sidewalk." *Ali*, 218 Mich App at 588. This Court reasoned that the "Legislature's exclusion of light poles and trees from the scope of the highway exception evinces its intent that the exception not include fixtures." *Id*. at 589 (citation omitted). Moreover, the bus passenger shelter was "a freestanding structure" that was "linked with the sidewalk solely

---

[3] The dissent attempts to distinguish *LaMeau* by asserting that the plaintiff was injured by a guy wire that was "several feet" above the sidewalk rather than by an object "in" or "on" the sidewalk. Yet, the guy wire in *LaMeau* was not just an object existing several feet above the sidewalk. Rather, it was anchored to (i.e. imbedded in) the sidewalk itself. *LaMeau*, 289 Mich App at 160. The fact that the injury was not caused by the plaintiff tripping over the anchored part of the wire as opposed to the part of the wire that was stretched above the sidewalk is, therefore, a distinction without meaning. Indeed, if we were to apply the dissent's logic to this case, we would have to conclude that the portion of the sign post that is connected to, but nevertheless above, the sidewalk is not part of the sidewalk and, therefore, Mann was not injured by what the dissent believes is a sidewalk defect. Further, it is unclear under the dissent's logic the exact point at which an object that is embedded into the sidewalk- but also extends above the sidewalk-would be akin to the stub in this case and at which point it would be similar to the guy wire in *LaMeau*. For instance, if the sign post had not been cut and Mann was injured by a fully functional sign post and sign, would the dissent still claim that Mann's injuries were caused by a defect in the sidewalk, notwithstanding that he would have collided with an object separate and distinct from the sidewalk, albeit one that was embedded in the concrete? Because we see no meaningful distinction between an anchored guy wire and an embedded sign post, we cannot ascribe to the dissent's strained analysis of *LaMeau*.

[4] The term "highway" as used in the GTLA, by definition, includes sidewalks. MCL 691.1401(c).

-6-

by its placement." *Id*. Considering that the highway exception must be narrowly construed, the Court concluded "that it does not encompass bus passenger shelters that are attached to the sidewalk." *Id*. We conclude that a sign post—even one that is cut down—is a separate fixture that is attached to the sidewalk. It does not become part of the sidewalk merely by being embedded in the concrete of the sidewalk.

In light of the statutory definition of sidewalk and the above caselaw, we are constrained to rule that a sign post is not part of the sidewalk. Regardless of how irresponsible the City may be for allowing a metal stub that is over five inches high to exist in the middle of its sidewalk (and near a bus stop), the Legislature has determined that no liability exists under the present circumstances.

Reversed and remanded for entry of an order granting summary disposition to the City. We do not retain jurisdiction. No taxable costs are awarded. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Thomas C. Cameron