*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MICHAEL EYDE TRUST.

---

KURT G. HATFIELD, Successor Trustee,

        Appellant,

v

GREENLEAF TRUST, Interim Trustee,
RICHLAND ANIMAL RESCUE, INC., CAROL
PALINSKI HILDEBRAND, ELIZABETH DALY
UNIS, JULIE BAKER, ATTORNEY GENERAL,
FIRST NATIONAL BANK OF MICHIGAN, and
HUNTINGTON NATIONAL BANK,

        Appellees.

UNPUBLISHED
March 28, 2024

Nos. 363624; 363625
Clinton Probate Court
LC No. 20-030844-TV

---

*In re* MICHAEL EYDE TRUST.

---

KURT G. HATFIELD, Successor Trustee,

        Appellant,

v

GREENLEAF TRUST, Interim Trustee,
RICHLAND ANIMAL RESCUE, INC., CAROL
PALINSKI HILDEBRAND, JULIE BAKER, and
ELIZABETH DALY UNIS,

        Appellees,

and

No. 363882
Clinton Probate Court
LC No. 20-030844-TV

-1-

CHRISTOPHER J. PALINSKI and ATTORNEY
GENERAL,

        Other Parties.

---

Before:  M. J. KELLY, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

In Docket No. 363624, Appellant, Kurt G. Hatfield, appeals as of right an October 19, 2022 order in which the Clinton County Probate Court appointed Greenleaf Trust ("Greenleaf") as interim trustee of the Michael Eyde Trust and also ordered that Hatfield pay sanctions for contempt of court.  In Docket No. 363625, Hatfield appeals as of right an October 25, 2022 order wherein the court reiterated that Greenleaf was appointed as interim trustee, but clarified that Hatfield preserved his right to be appointed as successor trustee.  In Docket No. 363882, Hatfield appeals as of right a November 10, 2022 order wherein the court added the legal bases for its decision to appoint an interim trustee and also rescinded its order of sanctions.[1]  We affirm, but clarify that the sanctions as set forth in the order being appealed in Docket No. 363624 are vacated.

## I.  BACKGROUND FACTS AND PROCEDURAL HISTORY

This case involves a complex trust involving over $250 million in assets.  Julie Baker, Elizabeth Daly Unis, Carol Palinski Hildebrand, and Christopher Palinski were designated by Michael Eyde, the decedent, as the beneficiaries of the smaller "credit portion" of the trust, and the remainder—the "charitable portion"—was to go to Richland Animal Rescue, Inc. ("Richland").  In an earlier opinion, this Court concluded that Costello, the original trustee after the death of Eyde, had validly transferred the situs of the trust to Illinois.  *In re Michael Eyde Trust*, unpublished per curiam opinion of the Court of Appeals, issued January 22, 2022 (Docket Nos. 355947 and 356500).

On remand, the probate court concluded that, under MCL 700.7205(1), it could nevertheless entertain Baker's and Richland's petitions to remove Costello as trustee.  In their supporting briefs, Baker and Richland argued that Hatfield, who is named in the trust as the successor trustee, should not be allowed to assume the role of trustee if Costello was indeed removed, because he was closely aligned with the supposedly untoward actions Costello undertook.  Allegedly, Costello and Hatfield were attempting to remove Richland as a beneficiary and designate "MGE foundation," a foundation purportedly controlled by Costello, as the beneficiary of the charitable portion of the trust.

---

[1] A question has been raised regarding whether Hatfield was entitled to an appeal as of right in any of his three appeals because only the appointment of an *interim* trustee is at issue.  We conclude that these orders are all orders appealable as of right under MCR 5.801(A)(2)(a), because each order appoints or removes "a fiduciary or trust director."

-2-

At a scheduled motion hearing, Costello unexpectedly offered to resign as trustee. The probate court appointed Greenleaf as interim trustee to preserve trust assets and to continue the complex business dealings involving the trust. Greenleaf's appointment as interim trustee was pending a full hearing[2] regarding whether Hatfield should assume the role of successor trustee. After the probate court entered the order appointing Greenleaf as interim trustee, Hatfield sent e-mails to Greenleaf representatives threatening that they would be arrested for trespassing if they appeared at any property belonging to the trust. The probate court entered an order imposing sanctions against Hatfield as a result of this behavior. It later set aside the order imposing sanctions.

In connection with a motion for partial summary disposition involving (now former) trustee Costello's compensation, the probate court concluded that Costello had engaged in self-dealing by "hiring" his sole-member company, CFO-Intelligence, LLC, to sell trust assets, and had improperly paid himself $1,762,341.32 in bonus compensation in connection with the sales. It ordered Costello to repay this money to the trust. These appeals followed.

## II. HATFIELD'S APPEALS

On appeal, Hatfield argues that (1) the probate court had no jurisdiction, authority, or factual basis to appoint Greenleaf as interim trustee and disallow him from immediately assuming the role of successor trustee; (2) the probate court improperly imposed sanctions on him for contempt of court; and (3) the case should be remanded to a different judge. We disagree.

## A. STANDARD OF REVIEW

Issues involving subject-matter jurisdiction are reviewed de novo. *Peterson Fin, LLC v Kentwood*, 326 Mich App 433, 441; 928 NW2d 245 (2018). Similarly, questions of statutory interpretation are also reviewed de novo. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009).

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [*Id.* at 506 (quotation marks and citations omitted).]

---

[2] That full hearing has yet to be held.

-3-

## B. LAW AND ANALYSIS

MCL 700.7205 states, in relevant part:

> (1) If a party objects, the court shall not entertain a proceeding under section 7203 that involves a trust that is registered or that has its principal place of administration in another state, unless either of the following applies:
>
> (a) All appropriate parties could not be bound by litigation in the courts of the state where the trust is registered or has its principal place of administration.
>
> (b) The interests of justice would otherwise be seriously impaired. [MCL 700.7205(1).]

Hatfield argues that, because Costello transferred the trust's principal place of administration to Illinois, see *In re Michael Eyde Trust*, unpub op at 11, the probate court had no jurisdiction to entertain any of the proceedings at issue in his appeals. But, the probate court properly followed this Court's directive. In the earlier appeal, this Court made clear that an analysis regarding whether MCL 700.7205(1)(b) applied, such that the probate court could entertain further substantive petitions involving the trust, was "a question for further proceedings." *In re Michael Eyde Trust*, unpub op at 13. The applicability of applying either of the exceptions in MCL 700.7205(1) was placed squarely into play at a hearing on May 11, 2022, and Costello's attorney argued against having a Michigan court entertain the proceedings.

The probate court found that MCL 700.7205(1)(b) provided a basis to entertain the proceedings. It reasoned that almost all of the trust property was located in Michigan and that Richland and most of the other beneficiaries were located in Michigan. The probate court noted the trust agreement was registered in Clinton County, Michigan, and that "Illinois has no connection to Eyde, the trust, or trust property except . . . for the formality of the principal place of business and some subsequent paperwork being housed there." It continued:

> Almost . . . all of the witnesses that would be relevant to the proceedings and the underlying actions, both as to whether [Richland] is a beneficiary and the petitions challenging the trustee are in Michigan. Subpoenas from Illinois would not carry to Michigan . . . without some additional litigation[]. Holding these proceedings in Illinois would be burdensome and impose additional expenses, including . . . obtaining Illinois counsel, in addition to the Michigan counsel that's been . . . obtained, [and] trying to accommodate any subpoenas or other discovery request[s] between the states. And it would . . . seriously impact and impair the interest of justice for [Richland] and the beneficiaries if these proceedings were moved to Illinois.

Hatfield contends that the probate court applied an improper framework, applicable to forum non conveniens, in analyzing whether subdivision (b) applied, but Hatfield does not explain what he believes the proper framework should have been. Thus, we conclude that Hatfield has abandoned the argument that the probate court should have applied an alternative framework. See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (a party who

provides no legal support for his or her position has abandoned the issue). Hatfield cites *In re Murray Estate*, 191 Mich App 347, 349; 477 NW2d 510 (1991), wherein the Court stated:

> The petitioner argues that the interests of justice would be impaired seriously if the probate court did not assume jurisdiction over the trust. It is her position that justice would be defeated by the cost and inconvenience of litigating in Illinois. She points to the fact that most of the witnesses would be from Michigan and certain real property belonging to the trust is located in this state. We, however, agree with the probate court and do not find that the burdens complained of in this case would create a serious impairment of justice should the petitioner's claim regarding the trust be litigated in Illinois.

Hatfield argues that *In re Murray Estate* must be followed and requires reversal here. But, this Court has already indicated in the earlier appeal that the question regarding whether subdivision (b) applies is a fact-intensive inquiry. *In re Michael Eyde Trust*, unpub op at 12-13. That the facts in *In re Murray Estate* did not support the exercise of jurisdiction does not mean the same is true for this case. As noted by the probate court, Illinois has almost no connection to the trust in this case. Further, the trust in this case is not a "simple" trust. It involves millions of dollars of assets and complicated dealings with businesses and banks which are primarily located in Michigan, and the primary beneficiary of the trust is also located in Michigan. The probate court did not err by concluding that MCL 700.7205(1)(b) applied. Greenleaf contends that, whether subdivision (b) applies is not a true question of subject-matter jurisdiction but rather a matter of discretion, such that an abuse-of-discretion standard applies to the probate court's decision. We need not resolve this dispute, because, in any event, the probate court's decision was appropriate.[3]

Hatfield contends that, even if the probate court had jurisdiction over the petitions to remove Costello as trustee, it had no jurisdiction under MCL 700.7205 to entertain any contention that Hatfield should not be named as the successor trustee. But, MCL 700.7205(1) refers to whether the probate court should "entertain a proceeding" under MCL 700.7203. MCL 700.7203(1) states that "[t]he court has exclusive jurisdiction of proceedings in this state brought by a trustee or beneficiary that concern the administration of a trust as provided in section 1302(b) and (d)." (Citation omitted). MCL 700.1302(b) states, in relevant part, that the court has jurisdiction over a "proceeding that concerns the validity, internal affairs, or settlement of a trust [and] the administration, distribution, modification, reformation, or termination of a trust[.]" The probate court had jurisdiction over the *proceedings*. As part of those proceedings, and before the probate court engaged in its analysis under MCL 700.7205 at the May 11, 2022 hearing, Baker and Richland argued that Hatfield should not be allowed to serve as successor trustee. Hatfield's attorney then appeared at the May 11, 2022 hearing on Hatfield's behalf and expressly did not take a position[4] regarding whether the probate court should entertain the proceedings. The attorney

---

[3] We need not address the probate court's conclusion that subdivision (a) applied, in light of the applicability of subdivision (b).

[4] The transcript indicates Hatfield's attorney stated that Hatfield "does take a position," but, it is clear from context that this was a typographical or spoken error, and that intent was to state that he "does *not* take a position."

was well aware that Richland and Baker were asking that Hatfield not be appointed successor trustee, and argued that Hatfield needed to be given notice and a hearing with regard to that request. Hatfield then filed responses to the petitions, but did not argue a lack of jurisdiction under MCL 700.7205.

MCL 700.7208 states:

> A proceeding under section 7203 is initiated by filing a petition in the court and giving notice to interested persons as provided in section 1401. The court may order notification of additional persons. A judgment or order binds each person who is given notice of the proceeding even if not all interested persons are notified. [Citations omitted.]

Clearly, Hatfield had *actual notice* of the hearing, because his attorney appeared on his behalf at the May 11, 2022 hearing, and he did not then contest the probate court's jurisdiction under MCL 700.7205. Hatfield's contention that he had no proper opportunity to be heard on the MCL 700.7205 matter is disingenuous.

Hatfield next argues that no proper petition to remove him as a successor trustee was ever filed and, therefore, the probate court improperly appointed Greenleaf as interim trustee during the course of a hearing on October 17, 2022, instead of immediately recognizing Hatfield as successor trustee after Costello offered to resign.[5] However, MCL 700.7706 states:

> (1) The settlor, a cotrustee, or a qualified trust beneficiary may request the court to remove a trustee, or *a trustee may be removed by the court on its own initiative*.

> (2) The court may remove a trustee if 1 or more of the following occur:

> (a) The trustee commits a serious breach of trust.

> (b) Lack of cooperation among cotrustees substantially impairs the administration of the trust.

> (c) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the purposes of the trust.

> (d) There has been a substantial change of circumstances, the court finds that removal of the trustee best serves the interests of the trust beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.

---

[5] Hatfield cites MCL 700.7704(3)(a) and (4)(a), which speak to the filling of a trusteeship vacancy in charitable or noncharitable trusts "[i]n the manner designated by the terms of the trust."

-6-

(3) *Pending a final decision on a request to remove a trustee, or in lieu of or in addition to removing a trustee, to the extent it is not inconsistent with a material purpose of the trust, the court may order any appropriate relief under section 7901(2) that is necessary to protect the trust property or the interests of the trust beneficiaries.* [Citation omitted, emphasis added.]

MCL 700.7901(2)(e) states: "To remedy a breach of trust that has occurred *or may occur*," the probate court may "[*a*]*ppoint a special fiduciary to take possession of the trust property and administer the trust.*" (Emphasis added).

These statutes indicate that the probate court, even without a specific petition to remove Hatfield before it, could, on its own initiative, remove him as a trustee and appoint a special fiduciary. This is what the probate court did. As such, Hatfield's complaints about the lack of a specific petition or about allegedly unverified briefs filed by Baker and Richland are unavailing.

Hatfield appears to assert that the probate court could not *remove* him as a trustee before he actually assumed the position after Costello's resignation. But, the probate court was well aware that Costello was resigning with an effective date of October 18, 2022, and it ruled at the October 17, 2022 hearing that, pending its final decision on whether Hatfield should be "removed" as the successor trustee as designated in the trust, Greenleaf would serve as interim trustee. This was a proper application of the statutory framework as a whole.

Hatfield also complains that there were no grounds to remove him and he has not had a proper opportunity to be heard on this issue. But, the probate court repeatedly indicated that a full hearing would take place on this matter. The probate court was acting under MCL 700.7706(3) and MCL 700.7901(2) by appointing a special fiduciary to oversee this very large and complicated trust until a final decision could be reached regarding Hatfield's appointment as successor trustee. Hatfield argues that the various conditions in MCL 700.7706(2) were not satisfied, but the probate court was not at the stage of evaluating those statutory conditions; those will be addressed at the full hearing. The probate court only needed to find a breach of trust *may* occur, see MCL 700.7901(2), and Baker and Richland provided adequate offers of proof in that regard. Also, contrary to his contention on appeal, Hatfield had an opportunity to be heard at the October 17, 2022 hearing, and to make his argument that an interim fiduciary was not necessary.

Hatfield has not demonstrated any entitlement to appellate relief in connection with the probate court's decision to appoint an interim trustee pending a full decision on Hatfield's appointment as successor trustee.

Hatfield also asserts that the probate court improperly sanctioned him. The probate court imposed the sanctions when Hatfield, after the probate court appointed Greenleaf as interim trustee, sent e-mails declaring he was the successor trustee and threatening that, if Greenleaf employees or any of the attorneys involved were to come onto trust property, they would be trespassing and subject to arrest. The probate court concluded that Hatfield had violated its oral ruling from October 17, 2022 hearing appointing Greenleaf as interim trustee. On appeal, Hatfield contends, in part, that the October 17 oral ruling was not transmuted to a written order at the time of his alleged violation, and, therefore, he did not commit contempt of court. We decline to address this issue because the probate court *rescinded* the order of sanctions. Hatfield avers that the

probate court could not do so because, at the time of the alleged rescinding, he had already appealed the October 19, 2022 order imposing sanctions. MCR 7.208(A) states:

> *After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from* except
>
> (1) by order of the Court of Appeals,
>
> (2) by stipulation of the parties,
>
> (3) after a decision on the merits in an action in which a preliminary injunction was granted, or
>
> (4) as otherwise provided by law. [Emphasis added.]

Hatfield is correct that the probate court did not have the authority to set aside the judgment imposing sanctions. However, MCR 7.216 states, in relevant part:

> (A) Relief Obtainable. The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just:
>
> (1) exercise any or all the powers of amendment of the trial court or tribunal;
>
> * * *
>
> (7) enter any judgment or order or grant further or different relief as the case may require[.] [MCR 7.216(A)(1) and (7).]

In addition, MCR 7.208(A)(1), as noted, allows a court to "set aside" a judgment "by order of the Court of Appeals."

This is a clear situation in which we should exercise our authority under MCR 7.216 and MCR 7.208(A)(1) to rescind the probate court's order of sanctions in order to give the court's prior order full force and effect. Indeed, the probate court has issued a show-cause order stating:

> IT IS FURTHER ORDERED that Kurt Hatfield shall appear before this Court on April 25, 2023, at 9:00 a.m. to show cause why he should not be held in contempt of [c]ourt for failing to comply with the [c]ourt's October 17, 2022 order from the bench, which was codified in writing in its October 25, 2022 Order Following Hearing. This show cause hearing is rescheduled following an adjournment or the show cause hearing previously scheduled for February 15, 2023.

If the probate court had any intention of actually enforcing the "already imposed" sanctions set forth in the October 19, 2022, order, it would not have ordered a show-cause hearing to *address the issue of sanctions*. Hatfield appears to want this Court to address the issue before the probate court fully does so, but the issue is not ripe for our review. See, e.g., *Van Buren Charter Twp v*

*Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017).[6]  We therefore order that the probate court's order rescinding the sanctions be given effect.

Hatfield also believes this case should be assigned to a different judge on remand. However, this contention is merely based on rulings made against him.  "Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying." *Bayati v Bayati*, 264 Mich App 595, 603; 691 NW2d 812 (2004).  A party seeking a different judge on remand "must demonstrate that the judge would be unable to rule fairly on remand given his past comments or expressed views."  *Id.*  "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality."  *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001) (quotation marks and citations omitted).  Hatfield has not demonstrated favoritism or antagonism to overcome the presumption of impartiality.  He contends that the judge accommodated Greenleaf's request to change the wording of the proposed settled record[7] of the October 17, 2022 hearing, despite the alleged untimeliness of the request, while not granting Hatfield similar concessions regarding timeliness.  But, obviously, it was paramount that the settled record be accurate and therefore the probate court's decision to change the wording of a proposed order is not indicative of favoritism toward Greenleaf.

We affirm in all the appeals, with the clarification that the sanctions set forth in the order being appealed in Docket No. 363624 are vacated.  This case is remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

---

[6] *TM v MZ*, 501 Mich 312; 916 NW2d 473 (2018), cited by Hatfield, is distinguishable.  In that case, even though a personal protection order (PPO) had expired, it was still appropriate for the appellate court to address the propriety of the PPO because it would influence what would appear in the affected party's criminal record.  *Id*. at 319-320.

[7] A failure of the probate court's recording equipment necessitated the creation of the settled record.